398 F.2d 310
 5 UCC Rep.Serv. 565
 OLD COLONY TRUST COMPANY, United Ventures, Inc., and Gabriel Powers,
v.
PENROSE INDUSTRIES CORPORATION, Wm. Penn Broadcasting
Company, Redevelopment Authority of the City of
Philadelphia, William H. Sylk, Harry S. Sylk, Jonas Senter,
Selma Katz, Samuel Rosenblum, Simon Rosenblum, Leon J.
Obermayer, Conservator, and Walter E. Heller & Co., Inc.
Penrose Industries Corporation, William H. Sylk and Harry S.
Sylk, Appellants in No. 17211.
William Penn Broadcasting Company, Appellant in No. 17212.
Leon J. Obermayer, Conservator, Appellant in No. 17213.
 Nos. 17211-17213.
 United States Court of Appeals Third Circuit.
 Argued June 7, 1968.
Decided July 25, 1968.
 
 Arlin M. Adams, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Ira P. Tiger, Egnal & Simons, Michael H. Egnal, Philadelphia, Pa., on the brief), for appellants in Nos. 17211 and 17212.
 Alexander N. Rubin, Jr., Goff & Rubin, Philadelphia, Pa. (Stephen R. Bolden, Philadelphia, Pa., on the brief), for appellant in No. 17213.
 Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellant in No. 17211.
 David Berger, Cohen, Shapiro, Berger, Polisher & Cohen, Philadelphia, Pa., for David Milgram and Associates.
 Henry W. Sawyer, III, Drinker, Biddle & Reath, Philadelphia, Pa. (John S. Estey, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for appellees United Ventures, Old Colony Trust Co. and Gabriel Powers.
 Isadore Gottlieb, Philadelphia, Pa. (Milton C. Sharp, Philadelphia, Pa., on the brief), for appellee Redevelopment Authority of the City of Philadelphia.
 William T. Coleman, Jr., Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa. (Helen H. Stern, Philadelphia, Pa., on the brief), for appellee Walter E. Heller & Co., Inc.
 Before McLAUGHLIN, STALEY and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 These are appeals by certain of the defendants below from three orders of the district court all dated January 25, 1968. The first and most important order contained a judgment declaring that the sale by the plaintiffs of pledged collateral, consisting of stock in and a debenture executed by a corporation operating a radio station (WPEN), was a 'commercially reasonable' disposition within the meaning of Sections 9-504 and 9-507 of the Uniform Commercial Code ('Code') and was an otherwise lawful contract of sale. Old Colony Trust Co. v. Penrose Industries Corp., 280 F.Supp. 698 (E.D.Pa.1968).[1] The second order required two of the defendants (Penrose Industries Corp. and WPEN) to sign any document required by the Federal Communications Commission in order to consummate the sale of the pledged stock under the contract of sale. The third order denied a petition by defendants, Sylks, filed after the declaratory judgment hearing, for an order directing plaintiffs to transfer their security interest and the accompanying collateral upon payment of the sums due. All three orders were made final judgments by the insertion therein of the recitals provided for by F.R.Civ.P. 54(b).
 
 
 2
 The appealing defendants first contend that the plaintiffs failed to live up to their statutory obligation to use their best efforts to see that the highest possible price was received for the collateral. Without engaging in a discussion of 'best efforts,' we think an examination of the record and the findings of the district court refute defendants' contention. Their argument amounts to a quarrel with the district court's entirely warranted evaluation of the evidence concerning the obstructive activities of the Sylks in connection with the attempts by the secured parties to dispose of the collateral after prolonged default. Equally without merit is defendants' attack on the propriety of a private rather than a public sale of the collateral. Not only was such a sale specifically authorized by the Code and the pertinent instruments, but it was amply justified in view of the evidence concerning the unique nature of the asset underlying the collateral, i.e., a radio station.
 
 
 3
 Defendants next urge that the sale was not a 'commercially reasonable' disposition of the pledged collateral within the meaning of that term in the Code. They say that the evidence demonstrated that several 'offers' for the collateral, which were presented either to the plaintiffs or the district court, would produce a substantially higher 'price' or 'value' than the dollar amount which will be received from the contract of sale made by the plaintiffs. The offers, two of which came after the execution of the contract of sale, are analyzed at length in the elaborate opinion of the district court. We think its conclusion that none of the 'offers', when reduced to present value, exceeded the current dollar value of the contract made by plaintiffs is amply supported by the record. This is so whether we are concerned with the district court's findings of facts or the ultimate inferences it is said to have drawn thereform.
 
 
 4
 The defendants also contend that it was improper to permit the plaintiffs to sell the WPEN debenture when a sale of the stock alone would have provided sufficient funds to satisfy their claims. Considering the rather unique asset underlying the collateral, it is clear on this record that it would have been extremely difficult if not impossible to sell the stock apart from the debenture without a resulting serious sacrifice in value received. The reasons are amply spelled out in the opinion of the district court. Furthermore, a sale of the stock without the debenture might well have rendered the agreement commercially unreasonable to the extent that the interests of certain junior creditors were entitled to consideration.
 
 
 5
 The Conservator contends that the private sale here was not commercially reasonable 'where the terms of said sale are not as beneficial to unsecured creditors of the pledgee as are the terms of certain higher offers to purchase the pledged stock, which other offers would have been equally beneficial to the secured creditors.' We have already indicated our approval of the district court's findings concerning 'infirmities' in the 'offers.' Moreover, the Conservator's contention clashes with the position of another junior creditor (Phila. Redevelopment Authority) whose claim is also secured by the WPEN stock, and which wants cash not 'paper' security. The Conservator says that the unsecured creditors should not be penalized because the Sylks-- who in reality operate WPEN-- failed to cooperate in a sale for the 'high' dollar. The answer is that in view of the nature of the underlying asset involved, the attitude and activity of the Sylks were relevant factors to be considered under the governing Code test. Under the particular circumstances of this case, the matter had to be evaluated by the secured parties and the district court as it was, not as the non-Sylks interests wished it.
 
 
 6
 We conclude that the order granting the declaratory judgment was proper. Since no independent argument is made with respect to the implementing order compelling certain defendants to cooperate in connection with the necessary application to the Federal Communications Commission, we also affirm that order.
 
 
 7
 Finally, we consider the appeals from the order denying the post-hearing petition of the Sylks for an order directing the plaintiffs to transfer their security interest and the collateral to them upon payment of the sums due plaintiffs.
 
 
 8
 The contract in issue ('Field Agreement') was signed on May 26, 1967. The Sylks were given formal notice that they had until June 7, 1967, to exercise their right of redemption. This they did not do. The reasonableness of this period is not subject to challenge. Indeed, as far back as 1964 the Sylks had been requested to redeem the collateral because of existing defaults. The complaint in this cause was filed June 1, 1967. The hearings on the declaratory judgment request, which followed several preliminary hearings, commenced on August 23, 1967 and lasted for thirteen days. The matter was briefed. While the district court had the matter under advisement, the Sylks, on December 7, 1967, filed their petition to redeem the collateral. The court granted the declaratory judgment on January 25, 1968, and on the same day denied the petition to redeem as 'untimely.'
 
 
 9
 The Code (Section 9-506) provides, inter alia, that 'at any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9-504 * * * the debtor may reclaim the collateral by tendering payment of all sums due under the defaulted agreement * * *.' Section 9-504 authorizes a secured party, after default, to sell or otherwise dispose of the collateral publicly or privately so long as every aspect of the disposition is commercially reasonable. It was this Section which formed the basis for the declaratory judgment request. Paragraphs 1.1 and 1.2 of the Field Agreement provided that there was to be no 'contract' for the sale of the stock and debenture until the expiration of the period given for redemption (June 7, 1967). Admittedly there was no redemption even attempted up to June 7, 1967. Thus, the contract became effective by its terms and the trustee became obligated under that contract to use its best efforts to obtain judicial approval. It is true that it contained specific provisions which, had they become operative, would have permitted the parties to avoid the contract. But the provisions in question were not 'conditions precedent' in the sense that either party was legally free to withdraw from the contract without reason. We are satisfied that prior to the time the petition for redemption of the collateral was filed the secured parties had 'entered into a contract for its disposition' within the meaning of that provision of Section 9-504 of the Code. The Code definition of 'contract' (1-201(11)), as well as the Code objectives, is entirely consistent with this conclusion. We therefore agree with the district court that the petition was untimely.
 
 
 10
 The orders of the district court will be affirmed.
 
 
 
 [1]
 While the Massachusetts Commercial Code was applicable generally, we think the result would be the same here were the Pennsylvania Commercial Code to be applied