MONAHAN LOAN SERVICE,
INC., Appellee,

v.

Loretta Lucille JANSSEN, Robert L.
Tannahill, and Iva Tannahill,
Appellants.

No. 83–836.

Supreme Court of Iowa.

May 16, 1984.

C.R. Hannan of Perkins, Sacks & Hannan, Council Bluffs, for appellants.

W.D. Groteluschen of Madsen, Groteluschen & Tinker, Audubon, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and CARTER, JJ.

CARTER, Justice.

Defendants appeal from judgment for plaintiff loan company in an action upon a promissory note executed by defendant Loretta Lucille Janssen, as maker, and defendants Robert L. Tannahill and Iva Tannahill, as guarantors, in connection with a consumer credit transaction. The case was tried to the court without a jury and resulted in a judgment for the plaintiff loan company in the sum of $4780.60. The issues on appeal concern whether the trial court erred in not awarding the defendants statutory penalties requested under Iowa Code section 537.5201(1) (1981) for an alleged violation of the Iowa Consumer Credit Code, and in not awarding directly to defendants' attorney a reasonable fee for establishing such violation.

Prior to the commencement of the present action in Pottawattamie County, the plaintiff had initiated a similar action in Audubon County, seeking to recover from the same defendants on the same obligation. The Audubon County action was filed July 28, 1982.

On August 18, 1982, the defendants answered that action asserting that they were residents of Pottawattamie County and could only be sued there by reason of Iowa Code section 537.5113 (1981). On August 23, 1982, the present action was commenced in Pottawattamie County. Three days later plaintiff dismissed the Audubon County action without prejudice.

In Division II of their answer to plaintiff's petition in Pottawattamie County, defendants prayed for recovery of "reasonable attorney fees for the defense of the action in Audubon County, Iowa." In Division III of their answer to that petition, defendants each asserted a counterclaim seeking recovery of "a penalty of not less than $100.00 nor more than $1000.00 as provided for by ... § 537.5201(1)(c) and his cost in this action, including his attorney's reasonable fees, as provided for by ... § 537.5201(8)."

As basis for this counterclaim, it was alleged that the filing of the original petition in Audubon County was a violation of section 537.5113 of the Iowa Consumer Credit Code and further alleged that the Audubon County action had prayed for a recovery of plaintiff's attorney fees from defendants in violation of section 537.2507 of the Iowa Consumer Credit Code.

The trial court failed to award defendants any statutory penalties under section 537.2501(1) and only allowed recovery of attorney fees for defendants' defense of the dismissed action in Audubon County. The latter award was set off against the amount found owing to plaintiff by defendants.

On appeal, defendants assert that they each should recover statutory penalties under section 537.5201(1) for two separate violations of the Iowa Consumer Credit Code. These violations are claimed to be (1) plaintiff's action in filing suit in Audubon County, and (2) plaintiff's action in praying for the recovery of "all costs of this action including attorney fees as provided by law" in the Audubon County petition. In addition, defendants claim on appeal that the trial court erred in not sustaining their affirmative defense which alleged that no deficiency judgment could be entered in this action as a result of plaintiff's repossession and sale of certain collateral on the loan in other than a commer-

cially reasonable manner. We consider each of these claims separately.

I. *Filing of Action on Consumer Loan in the Wrong County.*

All parties agree that the original action in Audubon County could not properly be maintained there by reason of the provisions of section 537.5113 which provides "[a]n action by a creditor against a consumer arising from a consumer credit transaction shall be brought in the county of the consumer's · residence...." Plaintiff urges, however, that this was not a violation of the type for which penalties and attorney fees can be awarded under section 537.5201(1), or (8).

It is not entirely clear whether the partial award of attorney fees to the defendants made by the trial court was based on a belief that the filing of the action in the wrong county did provide a basis for relief under section 537.5201 or whether it was based on defendants' entitlement to recoup attorney fees under Iowa Rule of Civil Procedure 167(e) which was frustrated by plaintiff's dismissal of the Audubon County action before the court in that county ruled on the challenge to venue. In any event, plaintiff may seek to sustain the judgment of the district court without appealing by contending that no recovery of a statutory penalty or award of attorney fees was authorized for the type of violation involved.

■ Review of the statutory scheme contained in section 537.5201 indicates that statutory penalties therein provided are not authorized for any violation of chapter 537 but only for those violations specifically enumerated in subsection (1) of section 537.5201. While nothing in that subsection directly pertains to the filing of a consumer credit action in the wrong county, item *y* provides for recovery of statutory penalties for violating the "[p]rohibitions against unfair debt collections practices under section 537.7103." Section 537.7103 provides:

A debt collector shall not collect or attempt to collect a debt by means of an illegal threat, coercion or attempt to coerce. The conduct described in each of the following paragraphs is an illegal threat, coercion or attempt to coerce within the meaning of this subsection:

. . . .

*f.* An action or threat to take an action prohibited by this chapter or any other law.

Section 537.5113 requiring suit to be brought in the county where the debtors reside is in the same chapter of the Code as section 537.7103(1)(f). Filing a suit in the wrong county is an act prohibited by that chapter. In addition, we conclude that filing an action to collect money owed is debt collection as defined in section 537.7102(2).

■ Based on the foregoing conclusions, we hold the defendants are entitled to recover a statutory penalty in some amount pursuant to subsection (1) of section 537.5201, together with their costs of action. In addition, the attorneys for the defendants are entitled to recover "their reasonable fees" as authorized by subsection (8) of section 537.5201. The trial court erred in not providing defendants and their attorneys with such a recovery.

Section 537.5201(1) also permits an award of actual damages for a specified violation. We believe that the attorney fees awarded to defendants by the trial court for the defense of the Audubon County action are sustainable as such damages. The recovery allowed for those attorney fees, which we in no way disturb, shall not affect the right of the attorneys to recover "their reasonable fees" in the Pottawattamie County litigation.

II. *Effect of Prayer for Recovery of Plaintiff's Attorney Fees in the Audubon County Action.*

We next consider defendants' claim on appeal that they established a right to recover a statutory penalty, costs, and attorney fees because the plaintiff in the petition filed in Audubon County prayed for a recovery of attorney fees in a consumer credit transaction.

In this court, defendants posit their right to such relief on Iowa Code sections 537.7103(4)(h) and 537.7103(5)(d). These statutes provide, in part:

4.... The following conduct is fraudulent, deceptive, or misleading within the meaning of this subsection:

....

*h.* A representation that an existing obligation of the debtor may be increased by the addition of attorney's fees ... when in fact such fees or charges may not legally be added to the existing obligation.

....

5. A debt collector shall not engage in the following conduct to collect or attempt to collect a debt:

....

*d.* The collection of or the attempt to collect interest or other charge, fee or expense incidental to the principal obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation and is legally chargeable to the debtor...

Plaintiff contends that these claims are raised for the first time on appeal and should not be considered for this reason. Based upon our examination of the record, we agree with this contention.

Both the pleadings and defendants' opening statement in the district court indicated to the trial court that their only theory in that court based on an improper attempt by plaintiff to recoup attorney fees was based on section 537.2507. That section precludes inserting provisions for recovery of attorney fees in a contract or note evidencing a consumer credit obligation. The trial court found that the note in the present case did not violate this section, and defendants do not contest this finding on appeal.

■ The argument now raised involving the debt collection practices proscribed by sections 537.7103(4)(h) and 537.7103(5)(d) were not urged by defendants until after the evidence was closed in the trial court. They first indicated reliance on these statutes on a brief filed with the district court following conclusion of the trial. We find that this belated reliance on the statutes last cited was untimely. It denied the plaintiff any opportunity to defend against this claimed violation by showing, as permitted by section 537.5201(7), that the prayer for relief in the Audubon County action was inadvertently drafted, unintentional, or resulted from a bona fide error. We conclude that the district court acted well within its discretion in refusing to consider those claims.

III. *Alleged Disposal of Collateral in Manner Not Commercially Reasonable.*

The evidence reflects that the consumer loan upon which plaintiff's claim is based was secured in part by a security interest in a mobile home. Pursuant to the provisions of the security agreement, the plaintiff on or about February 28, 1982 took possession of the mobile home and on March 1 mailed notice of intent to sell same at private sale to the defendants. On July 1, 1982, the plaintiff sold the mobile home for $1500. The sum of $840.34 was taken from these proceeds of sale and applied against plaintiff's costs of repossession. The balance of the proceeds received on sale of the mobile home was credited against defendants' obligations on the present consumer loan.

In the district court, defendants asserted as an affirmative defense that this collateral had not been disposed of in a commercially reasonable manner. The basis for this defense is section 537.5103(3) (1981) which provides that, when a lender takes possession of collateral pursuant to a security interest arising from a consumer loan, it must be disposed of according to "the provisions on disposition of collateral in sections 554.9501 to 554.9507." The sections of the Code last referred to are contained in article 9 of the Uniform Commercial Code. The significant portions of these limitations on the disposal of collateral include the following:

554.9504

1. A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale

of goods is subject to the Article on Sales (Article 2). The proceeds of disposition shall be applied in the order following to

    *a.* the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;

    *b.* the satisfaction of indebtedness secured by the security interest under which the disposition is made;

    . . . .

    3. Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. . . .

554.9507

    1. If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

    2. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. . . .

Defendants suggest that incorporation by reference of sections 554.9501–9507 of the Uniform Commercial Code into section 537.5103(3) of the Iowa Consumer Credit Code presents a bar to recovery of an unpaid loan balance when the collateral is not sold in a commercially reasonable manner. We are not certain that this is the clear import of section 554.9507(1) which provides that the remedy for noncompliance is recovery by the debtor of "any loss caused by a failure to comply."[1]

The language of section 554.9507(1), contained in article 9 of the UCC, contrasts with the provisions of article 2 of the UCC relating to repossession and resale in sales transactions. Section 554.2706(1) does make sale "in good faith and a commercially reasonable manner" a condition precedent for recovery of the unpaid balance of the contract price from a defaulting buyer. Section 554.9504(1) makes the article 2 pro-

---

**1.** In cases where the collateral is consumer goods, the statute also provides:

    [T]he debtor has a right to recover in any event an amount not less than the credit ser-

vice charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

vision applicable to article 9 transactions only where there has been a sale of goods.

Unlike a sales transaction where the amount owed relates directly to the price of the item sold, a loan transaction may involve several items of collateral some of which bear no direct relationship to the amount of the loan. In *Beneficial Finance Co. v. Reed,* 212 N.W.2d 454 (Iowa 1973), we left open the question of whether noncompliance with sections 554.9501–9507 in an Article 9 transaction constitutes a complete bar to recovery, and our cases since that time have not directly passed on that issue. We need not decide this question in the present case because the trial court reached its result on another ground which we approve.

The trial court after hearing the evidence found that the resale of the mobile home which constituted the collateral in the present case was accomplished in a commercially reasonable manner. Defendants challenge this finding on appeal. They do not raise the issue of sufficiency of notice such as was involved in *Northwest Bank & Trust Co. v. Gutshall,* 274 N.W.2d 713, 718 (Iowa 1979) and *Federal Deposit Insurance Corp. v. Farrar,* 231 N.W.2d 602, 605 (Iowa 1975). They base their challenge to commercial reasonableness upon the fact that the trailer was purchased by defendants in July of 1981 for $5000 and was sold by plaintiff in July of 1982 for $1500 after it had been repossessed.

■ Section 554.9507(2) provides, in part: The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.

While discrepancy in price may be an important consideration in resolving questions of commercial reasonableness, we adopt the views expressed in *In re Zsa Zsa Limited,* 352 F.Supp. 665, 670 (S.D.N.Y. 1972) and *Westgate State Bank v. Clark,* 231 Kan. 81, 89, 642 P.2d 961, 969 (1982) that:

It is the aggregate of circumstances in each case—rather than specific details of the sale taken in isolation—that should be emphasized in a review of the sale. The facets of manner, method, time, place and term cited by the Code are to be viewed as necessary and interrelated parts of the whole transaction.

If we apply these considerations to the present case, we find that there was considerable evidence to support the trial court's finding that the sale was completed in a commercially reasonable manner. The record shows the plaintiff had little, if any, other collateral for the loan in question and therefore had some motivation to secure as high a price as possible under the circumstances. There was evidence that the mobile home in question had been allowed to deteriorate and at the time of repossession was in such condition that it was not habitable. This circumstance limited those interested in buying it to persons who were willing to expend either time or money to recondition it. Plaintiff advertised the mobile home for sale. Inquiries were received but no offers were extended until July 1. On that date, two offers were received, the highest of which was for $1500. At this point in time, if the mobile home were not soon to be disposed of, plaintiff faced additional costs of between $600 and $700 for moving it to another location.

■ Considering the totality of the foregoing circumstances, we find that the record supports the trial court's finding that the method of sale was commercially reasonable. As observed in *Old Colony Trust Co. v. Penrose Industries Corp.,* 398 F.2d 310, 313 (3rd Cir.1968): The perspective in which each of these cases must be viewed is "as it was, not as the [defaulting debtor] wished it." The trial court did not err in its determination of this issue.

IV. *Disposition of Issues on Remand.*

Our holding in Division I of this opinion requires remand to the district court for a determination of the amount of said penalty and attorney fees to be assessed for plaintiff's violation of the Iowa Consumer

Credit Code. Determination of those issues by the district court shall be in accordance with our holding in *Public Finance Co. v. Van Blaricome*, 324 N.W.2d 716, 726 (Iowa 1982) with respect to amount of penalty and apportionment of costs and attorney fees. Penalties awarded to a consumer may be set off against the consumer's obligation to the creditor. Attorney fee awards are to be made directly to the attorney for the consumer and may not be set off; the $250 award for defense of the Audubon County action is the property of the defendants which may be set off.

Section 537.5201(8) also provides for recovery by the defendants of their costs of action. We direct that the costs of appeal shall be divided equally between the plaintiff and the defendants.

The award of attorney fees to be made by the district court following remand shall include a determination of a reasonable fee for processing the present appeal which, as in the case of the attorney fees in the district court, may be allocated between the plaintiff's claim and the counterclaim. The case is remanded to the district court for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.