**Bonnie LANDON, Appellee,**

v.

**MAPCO, INC., Appellant.**

No. 86–421.

Supreme Court of Iowa.

May 13, 1987.

As Amended June 12, 1987.

Myron L. Gookin of Foss, Kuiken & Gookin, P.C., Fairfield, for appellant.

Edwin F. Kelly of Kelly & Morrissey, Fairfield, for appellee.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE, and LAVORATO, JJ.

CARTER, Justice.

Defendant, Mapco, Inc., appeals from a judgment in favor of plaintiff, Bonnie Landon, in an action seeking recovery for (1) alleged consumer credit violations under Iowa Code chapter 537 (1985) (ICCC); (2) breach of contract; and (3) trespass. Following special verdicts by the jury, the court entered judgment for the plaintiff in the sum of $243.20 for breach of contract and $378.29 as actual damages sustained from ICCC violations. No damages were awarded on the trespass count, although the jury found that a trespass had been committed. Punitive damages of $1000 were awarded. In response to posttrial motions, the trial court also awarded the plaintiff statutory penalties of $200 for violations of the ICCC and attorney fees of $1000.

Defendant asserts that the court erred in submitting alleged ICCC violations to the jury because the transactions involved did not constitute consumer credit transactions. It further urges that the award of punitive damages was contrary to law. Plaintiff has cross appealed, asserting that she is entitled to a partial new trial on punitive damages because the district court erroneously excluded deposition testimony of defendant's manager bearing on the issue of malice. She also argues that the amount of attorney fees and statutory penalties awarded by the district court was too low. Upon our consideration of all of these issues, we affirm the judgment of the district court.

The case involves the following facts. On November 16, 1977, defendant entered into a written agreement with plaintiff's former husband, Jim Landon, which called for the lease and purchase of a 500–gallon propane tank. This agreement provided

for ten annual payments of forty-nine dollars. Upon completion of these payments, the lessee could acquire title to the tank upon payment of the sales tax for a sale equivalent to $490. The agreement provided that the tank furnished could only be used with liquified petroleum gas purchased from defendant.

No provisions in the lease agreement concerned the terms under which the liquified petroleum gas would be purchased by the lessees. Ledger accounts maintained by defendant with respect to these transactions indicate, however, that a finance charge was imposed at an annual percentage rate of between eighteen and twenty-one percent depending upon the legal rate in effect at the time of the transaction. These charges were only imposed upon unpaid balances more than thirty days old.

In January 1981 the plaintiff and Jim Landon were divorced. Thereafter, the defendant treated plaintiff, who continued to reside at the family residence with her four daughters, as the lessee-purchaser under the existing agreement. She continued through November 1983 to make annual payments on the tank. Sometime in 1983, defendant placed plaintiff's fuel purchases on a strictly COD basis as a result of her frequent tardiness in paying that account. In March 1984, plaintiff ran out of fuel and attempted to order more from defendant. Defendant refused to deliver any fuel to plaintiff unless it was paid for in advance.

In an effort to solve her problems, plaintiff contacted a friend named Patrick Ketchun who lived in Minneapolis. On March 22, Ketchun contacted defendant's office in Washington, Iowa, and personally guaranteed payment for plaintiff's fuel delivery. A supply of liquified petroleum gas was delivered to the tank at plaintiff's residence later the same day. Defendant made a ledger entry in the name of Ketchun showing delivery of 266 gallons of fuel to plaintiff's residence for a total charge of $238.07. The delivery ticket showed that the fuel was "sold to Bonnie Landon." Defendant's manager acknowledged at trial that both plaintiff and Ketchun were considered to be liable on this account.

Defendant had received no payment for the fuel as of April 9, 1984. On that date, it sent a letter to both Ketchun and plaintiff informing them that if payment was not made in full by April 19, 1984, "gas service will be discontinued and our equipment will be removed." When no payment was received on the account by April 19, defendant's employees went to plaintiff's residence the following day and repossessed the fuel tank together with approximately 100 gallons of fuel remaining in the tank.

Defendant eventually received payment on the balance owed (after credit for the returned portion of the fuel) from SIEDA funds available to low-income persons. Additional facts bearing on our decision will be stated in conjunction with our discussion of the legal issues.

I. *Whether the Alleged Violations Arose Out of a Consumer Credit Transaction.*

Defendant argues that in order to prove a violation of the ICCC, as alleged by plaintiff, a threshold element is the existence of a consumer credit transaction. This must be either a consumer credit sale, loan or lease. Iowa Code § 537.1301(11) (1985). For purposes of this appeal, we accept defendant's contention that only the sale of fuel, and not the lease of the tank, is involved with respect to the alleged violations in the present case.

The alleged ICCC violations are (1) excessive finance charges relating to the March 22, 1984, sale of liquified petroleum gas; and (2) failure to give plaintiff a twenty-day notice of right to cure the default before acting to repossess collateral.[1] A consumer credit sale involves goods purchased primarily for personal, family or household purposes. Iowa Code § 537.-1301(12)(a)(3) (1985). In addition, it is required that either (a) the debt is payable in more than four installments or (b) a finance charge is imposed. Iowa Code § 537.-1301(12)(a)(4) (1985).

---

1. This claim is based on Iowa Code § 537.- 5110(4)(a) (1985).

Defendant urges that because the terms of the March 22 sale required payment in full within thirty days, a contention not disputed by plaintiff, the element of installment payments is missing. As to the imposition of a finance charge, defendant contends that, although the ledger account shows the imposition of a 1.75% per month finance charge on the account on April 30, 1984, that charge was in fact a default charge for an unanticipated late payment excluded from the definition of "finance charge" by Iowa Code section 537.-1301(19)(b)(1) (1985). We disagree with the latter contention. The amount of the additional charge entered on the ledger on April 30, 1984, was $4.16 or 1.75% of the balance then showed to be owed. As shown by defendant's ledger entries dating back to November 1977, this matches the pattern of imposing finance charges on the plaintiff and Jim Landon's accounts throughout their course of dealing with defendant. The only exception to this practice was the brief period during which plaintiff had been placed on a strictly COD basis.

All of the evidence presented, viewed most favorably toward the plaintiff, suggests that, based upon Ketchun's guarantee, the defendant permitted plaintiff to revert back to her former billing status as of the March 22 delivery. This included the former arrangement for imposing a finance charge. Viewed in this light, the charges imposed were not for unanticipated late payments so as to be excluded from the ICCC definition of "finance charge" by section 537.1301(19)(b)(1). They were monthly finance charges which would be waived if payment was made within thirty days. We conclude such charges qualify the transaction as a consumer sale.

## II. *Sufficiency of Evidence Sustained Award of Punitive Damages.*

We next consider defendant's argument that the award of punitive damages is contrary to law. At the outset, we note that we are not called upon to determine whether if the only claims presented were ICCC violations, an award of punitive damages might be allowed in addition to the statutory penalties. The present claims involved the additional elements of trespass and breach of contract. The jury in answering the special verdict forms found the defendant liable on each of these theories in addition to finding violations of the ICCC. Although no damages were awarded by the jury on the trespass count, this was likely due to the fact that the court's instructions limited damages on that portion of the claim to diminution in value of plaintiff's real property as a result of the wrongful entry. Other damages sustained as a result of defendant's act in coming upon the premises were included under the breach of contract and ICCC violations.

Defendant urges that the record contains insufficient evidence of malice to sustain an award of punitive damages. This contention suffers, we believe, from defendant's failure to challege the jury's findings on the breach of contract and trespass counts either factually or legally. Consequently, we must accept these findings of the jury as a verity in our consideration of its award of punitive damages. We believe that the evidence of defendant's actions, viewed in the light most favorable to the plaintiff, shows a "breach of contract amounting to or accompanied by an independent tort" permitting an award of punitive damages under the criteria established in *Pogge v. Fullerton Lumber Co.,* 277 N.W.2d 916, 919 (Iowa 1979); *see also Ennen v. Public Serv. Mut. Ins. Co.,* 774 F.2d 321, 326–27 (8th Cir.1985) (applying Iowa law). The district court did not err in upholding the punitive damage award.

## III. *Refusal to Admit Deposition Testimony of Defendant's Managing Agent.*

Plaintiff on her cross appeal asks for a partial retrial on punitive damages in order that she may offer portions of the deposition of defendant's managing agent which she claims bear on the question of malice. The testimony in question implied that repossession of fuel tanks by defendant was not uncommon, notwithstanding the absence of a default in lease payments, if other accounts of the lessee were delin-

quent. It was indicated in the deposition testimony that this practice served well to get the debtor's attention.

■ The managing agent of defendant's Washington, Iowa, office, whose deposition testimony was excluded by the court, testified in person at the trial. This testimony was received out of order during plaintiff's case in chief. When, after that witness had been excused, plaintiff sought to read into evidence the disputed deposition testimony, the district court sustained the defendant's objection based upon plaintiff's failure to present the issue through inquiry of the witness when he was testifying in person. Exclusion of the proffered deposition testimony on this ground was, we believe, error. The proffered deposition testimony of the managing agent qualifies as vicarious admissions under Iowa Rule of Evidence 801(d)(2)(D). *See, e.g., Grayson v. Williams,* 256 F.2d 61, 66 (10th Cir. 1958); *Truck Line, Inc.,* 121 F.Supp. 417, 419 (D.D.C.1954). As a result, plaintiff should have been allowed to read the particular statements from the deposition into evidence under Iowa Rule of Civil Procedure 144(b), without regard to the witness's availability at trial. *Robinson v. Fort Dodge Limestone Co.,* 252 Iowa 270, 277–78, 106 N.W.2d 579, 583–84 (1960).

■ Notwithstanding our finding of error in the exclusion of this evidence, we do not believe that this circumstance compels the granting of even a partial new trial. The proffered testimony could not have adversely affected the jury's determination on liability under any of the theories presented because the jury found in plaintiff's favor on all theories. In addition, plaintiff concedes that the excluded testimony has no bearing on actual damages. Although the excluded testimony would have a bearing on punitive damages, the jury awarded punitive damages to plaintiff. Consequently, we may reverse only if the admission of the excluded testimony likely would have resulted in a higher amount of punitive damages. We believe that such likelihood is sufficiently in doubt on the present record that an otherwise proper

final judgment should not be overturned on this ground.

IV. *Adequacy of Award of Statutory Penalties and Attorney Fees.*

■ Plaintiff contends that the award of statutory penalties and attorney fees made by the district court pursuant to Iowa Code section 537.5201(8) (1985) was inadequate. We disagree. The statutory penalty allowed for the two violations established was within the range provided by law, and plaintiff has demonstrated no reason for disturbing the allowance made by the district court. With respect to the attorney fees, plaintiff's principal complaint is that the district court apportioned services expended on the various counts and only allowed plaintiff to recover attorney fees for those services allocated to the ICCC portion of the claim. Such apportionment is consistent with the treatment of ICCC attorney fee allowances approved by this court in *Monahan Loan Service, Inc. v. Janssen,* 349 N.W.2d 752, 758 (Iowa 1984), and *Public Finance Co. v. Van Blaricome,* 324 N.W.2d 716, 726 (Iowa 1982). We find no error in the allowance of attorney fees made by the district court. Because such entitlement under section 537.5201(8) also includes fees for appellate services, *see Van Blaricome,* 324 N.W.2d at 726, the district court should consider appellee's claims for such entitlement upon issuance of procedendo. We have considered all issues presented and find no basis for reversing the judgment.

AFFIRMED.