Nancy **HOGUE**, Plaintiff,

v.

**PALISADES COLLECTION, LLC, and Brumbaugh & Quandahl, P.C.,** Defendants.

**No. 4:07–cv–00109.**

United States District Court, S.D. Iowa, Central Division.

July 3, 2007.

---

Raymond H. Johnson, Johnson Law Firm, West Des Moines, IA, for Plaintiff.

Mark C. Quandahl, Sara E. Miller, Brumbaugh & Quandahl PC, Omaha, NE, for Defendants.

## ORDER ON MOTION TO DISMISS

PRATT, Chief Judge.

Before the Court is Defendants, Palisades Collection, LLC ("Palisades") and Brumbaugh & Quandahl, P.C.'s ("Brumbaugh") (collectively "Defendants") Motion to Dismiss, filed on May 9, 2007. Clerk's No. 9. Plaintiff, Nancy Hogue ("Hogue") filed a Resistance on May 31, 2007. Clerk's No. 13. Hogue requested oral argument, however, the Court finds that such argument would not materially aid the resolution of this motion. Accordingly, the matter is fully submitted.

### I. FACTS

The facts of this case are not in dispute. Hogue, a low income, elderly woman, had a credit card account with Chase Manhattan Bank with an outstanding balance of $8,443.28. *See* Compl. ¶¶ 7, 8; Defs.' Br. at 1; Pl.'s Resistance at 4. Chase Manhattan Bank assigned Hogue's account to Palisades, a collections agency. *See* Compl. ¶¶ 5, 7. After failed attempts to collect the outstanding balance from Hogue, Palisades employed the legal services of Brumbaugh, a law firm regularly engaged in the business of collecting debts on behalf of their clients. *See id.* ¶ 4; Defs.' Br. at 1. On or about October 16, 2006, Brumbaugh, on behalf of Palisades, filed a petition in Union County District Court seeking judgment in the amount of $8,443.28. Compl. ¶ 8. On or about October 24, 2006, Bill Nassif ("Mr.Nassif"), Iowa Legal Aid attorney, affiliated with the Legal Hotline for Older Iowans, wrote a letter to Brumbaugh and Palisades stating that he represented Hogue in this matter, and informed Defendants that Hogue's "income was exempt from collections." Defs.' Br. at 2; Compl. ¶ 9; *see* Pl.'s Resistance at 2–3. Along with the letter, Mr. Nassif included Hogue's sworn affidavit which stated that "her sole source of income was Social Se-

curity and it was the only source of deposits in her bank account." Compl. ¶ 9. The letter and affidavit were also provided to the Clerk of Court and the Wapello County Sheriff. *Id.*

Regardless, after Hogue failed to Answer the Petition, a default judgment was entered against Hogue for the amount of $8,443.28, plus costs and interest, on or about January 23, 2007. Compl. ¶ 10; Defs.' Br. at 2.[1] Fully aware of Mr. Nassif's October 24, 2006 letter and Hogue's affidavit, Brumbaugh nevertheless initiated garnishment[2] proceedings against Hogue's First National Credit Union checking account because Defendants allegedly had "no independent verification" that Hogue's only source of income was exempt Social Security benefits. Defs.' Br. at 2. On or about February 8, 2007, at the direction of Brumbaugh, the Wapello County Sheriff garnished Hogue's checking account. Compl. ¶ 10; Defs.' Br. at 2. On February 9, 2007, Mr. Nassif wrote yet another letter to Brumbaugh stating that Hogue's only source of income was from Social Security, and attached Hogue's bank statements confirming the same. Defs.' Br. at 2. The following Monday, on February 12, 2007, Brumbaugh released the garnishment. *Id.* On March 19, 2007, Hogue filed her Complaint against Defendants, alleging violations of the federal Fair Debt Collection Practices Act, the Iowa Debt Collection Practices Act, the Iowa Consumer Credit Code, and a common law claim for abuse of process. *See* Clerk's No. 1. Hogue asserts that "Defendants knew [her] bank account held only exempt funds" before garnishing it, and that Brumbaugh has "demonstrated a pat-

tern and practice of garnishing funds that it knows, or should know, are exempt." Compl. ¶ 11.

## II. STANDARD OF REVIEW

■ In addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court must follow the new standard of review articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court determined that the standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief[,]" has "earned its retirement." *Twombly,* 127 S.Ct. at 1968, 1969. The Supreme Court held that a viable complaint must now include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 1965. The new standard is not a "heightened fact pleading" requirement, but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965, 1974.

Under *Twombly,* as was the case under *Conley,* the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See id.* at 1964–65; *Parnes v. Gateway 2000, Inc.,*

---

1. Defendants state that the default judgment was entered on or about December 29, 2006. Defs.' Br. at 2. However, the exact date of the default judgment is of no importance in this instant matter.

2. Garnishment is "[a] judicial proceeding in which a creditor . . . asks the court to order a third party who is indebted to or is bailee for the debtor to turn over to the creditor any of the debtor's property (such as wages or bank accounts) held by that third party . . . ." Black's Law Dict. 301 (2nd pocket ed.2001).

122 F.3d 539, 546 (8th Cir.1997). Moreover, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true, even if doubtful. *See Twombly,* 127 S.Ct. at 1965; *see also Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Thus, a well-pled complaint may proceed even if it appears "that recovery is very remote and unlikely." *Twombly,* 127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

### III. LAW AND ANALYSIS

In her four count Complaint, Hogue alleges that Defendants' actions constituted a violation of the federal Fair Debt Collection Practices Act, the Iowa Debt Collection Practices Act, the Iowa Consumer Credit Code, and the common law tort of abuse of process. The Court will address each in turn.

#### A. *Fair Debt Collection Practices Act*

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") "in order to stop 'the use of abusive, deceptive and unfair debt collection practices by many debt collectors.'" *Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 771 (8th Cir.2001) (quoting 15 U.S.C. § 1692(a)). The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors ... and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Commentators have noted the need to rigorously enforce consumer protections laws, such as the FDCPA, to protect elderly consumers as "[a]verage credit card debt for Americans between the ages

of sixty-five and sixty-nine rose a staggering 217% between 1991 and 2001...." Deanne Loonin & Elizabeth Renuart, *The Middle–Class Crunch: The Life & Debt Cycle: The Growing Debt Burdens of Older Consumers and Related Policy Recommendations,* 44 Harv. J. on Legis. 167, 168, 193 (2007). Here, Hogue argues that Defendants' garnishment of her bank account, which Defendants knew only contained exempt Social Security funds, amounted to unfair or unconscionable collection practices in violation of the FDCPA. *See* 15 U.S.C. § 1692f (stating that the use of unfair or unconscionable collection methods is prohibited by the FDCPA). Defendants, however, contend that their garnishment action was not unfair or unconscionable because they followed Iowa's execution[3] and garnishment statutes.

While garnishment in aid of execution is provided for in Iowa Code § 626.26, the garnishment of Social Security payments is prohibited by federal law. Specifically, the Social Security Act provides:

> The right of any person to any future payment under this title ... shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title ... shall be subject to execution, levy, attachment, *garnishment,* or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (emphasis added). Iowa law also provides that, "[a] debtor ... may hold exempt from execution ... [t]he debtor's rights in ... social security benefit[s]...." Iowa Code § 627.6(8)(a). Even with these safeguards, however, Brumbaugh managed to garnish Hogue's bank account comprised entirely of Social

---

**3.** Execution is a "[j]udicial enforcement of a money judgment, [usually] by seizing and selling the judgment debtor's property," or "[a] court order directing a sheriff or other officer to enforce a judgment, [usually] by seizing and selling the judgment debtor's property." Black's Law Dict. 258 (2nd pocket ed.2001).

Security benefits. Brumbaugh argues that although it received Mr. Nassif's letter and Hogue's sworn affidavit stating that Hogue's sole source of income was from Social Security, Defendants initiated garnishment proceedings because they had "no independent verification" of Hogue's source of income. Brumbaugh contends that under Iowa law, it has "no means to ascertain what a judgment debtor's assets are unless [it] attempt[s] to execute or garnish a judgment debtor[,] [and only] [i]f the execution or garnishment comes back unsatisfied, then a judgment creditor can request the judgment debtor to appear and answer questions under oath concerning their assets." Defs.' Br. at 5. The Court disagrees.

█ First, Iowa law does not prohibit judgment creditors from "ascertain[ing] what a judgment debtor's assets are unless [the judgment creditor] attempt[s] to execute or garnish a judgment debtor." *Id.* at 5. There are numerous other options available to judgment creditors in Iowa seeking to "ascertain" a judgment debtor' assets. For example, there is nothing in Iowa law which prohibits Brumbaugh from contacting Mr. Nassif to inquire further into Hogue's source(s) of income. Indeed, the "independent verification" that ultimately prompted Brumbaugh to relinquish the garnishment came not from Hogue's bank, but rather from Mr. Nassif. After discovering that Hogue's bank account had been garnished, Mr. Nassif wrote a second letter to Brumbaugh and enclosed Hogue's bank account statements to demonstrate that the only source of deposits was from Social Security. Here, Mr. Nassif, as a source of information, was just as effective, if not more so, than any information the bank may have provided. Thus, Defen-

dants' argument that the garnishment proceeding was the *only* method to ascertain Hogue's assets seems disingenuous at best, given that Defendants obtained the necessary verification from Mr. Nassif, not from Hogue's bank.

█ Second, Defendants' contend that Iowa law *required* them to institute a garnishment proceeding prior to seeking a debtor's examination to determine the exempt status of Hogue's funds. Defendants cite to *Wilson v. Business and Professional Credit Management of Kearney, Inc.,* No. CV85–L–709, 1986 U.S. Dist. LEXIS 31002, at *1 (D.Ne. Aug. 26, 1986) (applying Nebraska law), for support. In *Wilson,* plaintiffs (judgment debtors), alleged violation of the FDCPA after Business and Professional Credit Management of Kearney, Inc. ("BPCM"), the judgment creditor, twice garnished the plaintiffs' bank account, even though the account only contained exempt Social Security funds. *See* 1986 U.S. Dist. LEXIS 31002, at *8. In *Wilson,* plaintiffs argued that BPCM should have initiated a debtor's exam rather than garnish the exempt funds to verify the exempt status of the funds. *See id.* at *6–7. Although the *Wilson* court disapproved of BPCM's actions, the court held that BPCM's garnishment of exempt funds did not violate the FDCPA. *Id.* at *17. The *Wilson* court explained that the first garnishment did not violate the FDCPA because BPCM "could not be certain that there were no exempt funds in the joint checking account prior to a resolution of the garnishment action...." *Id.* at *14. The *Wilson* court noted that, under the Nebraska statute, the debtor's exam did not become available until after the first garnishment was quashed. *Id.* (citing Neb.Rev.Stat. § 25–1565).[4] The court rea-

---

4. The Nebraska statute previously provided:
 When execution against the property of a judgment debtor ... is issued to the sheriff ... and is returned unsatisfied in whole or in part, the judgment creditor is entitled to an order from the county court or the district court of the county ... requiring the debtor to appear and answer concerning

soned that "[e]ven if [BPCM] knew that [plaintiff] was permanently disabled and that [his wife] was not at that time employed outside the home, [BPCM] had no way to know prior to the decision on the first motion to quash [the garnishment] whether there were other sources of funds in the joint account." *Id.* As for the second garnishment, the court reasoned that, because plaintiffs were selling exempt personal property to pay off the debt, it was not unreasonable for BPCM to believe that nonexempt funds had been deposited in the joint account during the period between the first garnishment and the second garnishment. *Id.* at *14–15.

*Wilson,* however, is factually and procedurally distinguishable from this case. In *Wilson,* plaintiffs did not provide BPCM with a sworn affidavit stating that the bank account only contained exempt funds. Rather, plaintiffs argued that BPCM had ample notice that the funds were exempt because plaintiffs informed BPCM that Mr. Wilson was disabled, that Social Security was their only income, and provided hospital outpatient summary forms from 1982 and 1983 which indicated that Mr. Wilson was disabled. *Id.* at *6. These types of assertions are more akin to the unsubstantiated contentions that Defendants fear would "remove the need for litigation altogether because anytime opposing counsel or the defendant claimed the defendant 'didn't do it,' or in this case 'judgment proof,' would simply resolve any dispute, because the defendant has stated it to be true." Defs.' Br. at 8. That is, in *Wilson,* BPCM had nothing other than plaintiffs' say so that the funds were exempt. Here, however, Hogue, who was

represented by counsel, provided a sworn affidavit to Defendants, swearing that Social Security was the only source of her income.

Additionally, *Wilson* was tried before the court, and the court found that BPCM could not be certain that no exempt funds were in the bank account prior to the first garnishment, and also that BPCM had a basis for believing that nonexempt funds were deposited in the account before issuing the second garnishment. *See* 1986 U.S. Dist. LEXIS 31002, at *1, 14–15. However, on a motion to dismiss, the Court must take the allegations in Hogue's Complaint as true and draw all reasonable inferences in favor of Hogue. Here, Hogue alleges that "Defendants knew [her] bank account held only exempt funds and that she was claiming that exemption," yet Defendants proceeded to garnish her account. Compl. ¶ 11. Thus, the Court finds *Wilson* unpersuasive in this procedural context.

Furthermore, there is no indication that Brumbaugh garnished Hogue's account in an effort to seek a debtor's exam. In any event, the Court looks to Iowa law to determine if Defendants' contention that a judgment creditor in Iowa *must* first garnish an account before it can seek a debtor's exam has merit. The Iowa statute concerning debtor's exam provides:

> When *execution* against the property of a judgment debtor, or one of several debtors in the same judgment, has been issued from the district court or an appellate court to the sheriff of the county where such debtor resides, or if the debtor does not reside in the state, to

his or her property before the judge of such court or a referee appointed by the judge....

In 2004, the statute was amended as follows: At any time after the entry of judgment against the judgment debtor ... the judgment creditor is entitled to an order from

the county court or the district court of the county ... requiring the debtor to appear and answer concerning his or her property before the judge of such court or a referee appointed by the judge....

Neb.Rev.Stat. § 25–1565; 2004 Neb. Laws 1207.

the sheriff of the county where the judgment was rendered, and execution issued thereon is returned unsatisfied in whole or in part, the owner of the judgment is entitled to an order for the appearance and examination of the debtor.

Iowa Code § 630.1 (emphasis added). Although the Court was unable to find Iowa case law directly on point, it appears that, as a general procedural matter, judgment creditors typically seek a debtor's exam after an execution against the property of a judgment debtor is returned unsatisfied. *See generally Mason City Prod. Credit Ass'n v. Van Duzer,* 376 N.W.2d 882, 887 (Iowa 1985); *Farmers Coop. Elevator Co. v. Knapp,* 259 N.W.2d 762, 765 (Iowa 1977); *Eikenbury v. Edwards,* 67 Iowa 619, 25 N.W. 832, 832 (1885).[5]

However, the Court finds it difficult to believe that Iowa Code § 630.1 necessarily prevents a judgment creditor from filing a petition to seek a debtor's exam prior to an unsatisfied return on the *garnishment,*[6] especially where, as here, the judgment creditor has an affidavit signed under oath swearing that the funds at issue are exempt. The petition may be denied by the court, but it may also be granted by the court given the specific circumstances of the case. The purpose underlying § 407(a) of the Social Security Act would be defeated if judgment creditors were allowed to garnish Social Security benefits because of an unfounded *possibility* that the bank account at issue *may* contain non-exempt funds. Here, given Mr. Nassif's letter and Hogue's sworn affidavit, any judgment creditor would almost be certain that the bank account only contained exempt Social Security funds. At a minimum, Defendants were put on notice of the likelihood and should have undertaken further verification with Mr. Nassif.

The information provided to Defendants prior to the garnishment were not merely "claims" by Hogue or Mr. Nassif, as Defendants suggest. *See* Defs.' Br. at 8. Rather, it was a sworn affidavit, signed under oath (and possibly under penalty of perjury)[7] that the sole source of Hogue's income was from Social Security. Defendants' concern over accepting the judgment debtor's or opposing counsel's contention of being "judgment proof" as "an undeniable truth" in this less than "utopian society" is unwarranted. *See id.* Here, Hogue did not merely state that her funds were exempt, nor submit an affidavit on

---

5. Defendants attach an unpublished case from the Southern District of Iowa to support their argument that they did not violate the FDCPA. *Parker v. Wetsch & Abbott, PLC,* No. 04–40502, slip op. at 6 (S.D.Iowa July 11, 2006) (Bremer, Mag. J.). However, *Parker* is factually and procedurally distinguishable. *Parker,* like *Wilson,* was tried before the court, and the Honorable Magistrate Judge Celeste F. Bremer found that defendant, a debt collector, did not violate the FDCPA because defendant "had a reasonable basis for believing that Parker's account contained nonexempt funds[,]" as the bank statements showed a line of credit with the bank which defendant determined to be nonexempt assets. *Id.* at 1, 2, 6. To the extent that *Parker* relied on *Wilson* to conclude that "a debt collector can not utilize a debtor's exam to determine which of a debtor's assets are exempt and which are

not exempt until the first execution or garnishment fails to satisfy the judgment[,]" the Court must respectfully disagree. *See id.* at 5.

6. Hogue states that debt collectors in Iowa and elsewhere "routinely" conduct debtor's exams without ever having to garnish a bank account, that in some instances, a failed *execution* results from inaction by the sheriff where assets cannot be located, or the sheriff goes to the judgment debtor's home and inquires as to any money in the home. Pl.'s Resistance at 7 n. 3.

7. Unfortunately, Hogue did not include a copy of her affidavit in her Complaint. Accordingly, it is unclear if Hogue's affidavit was sworn under oath, or sworn under oath under penalty of perjury.

her own stating the same without any basis—rather, Mr. Nassif, an attorney, confirmed that Hogue was "judgment proof" *and* enclosed Hogue's sworn affidavit. *See* Iowa R. Prof'l Conduct 32:3.1 (stating that a lawyer shall not assert or controvert an issue unless there is a basis in law and fact that is not frivolous); Iowa R. Prof'l Conduct 32:4.1 (stating that in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person).

Dealing in an adversarial system, Defendants must engage in due diligence, however, they must also take time to stop and think. Given the specific facts of this case, Defendants were not *only* left with the garnishment proceeding to verify Hogue's statements. It is difficult to believe, as Defendants suggest, that the Iowa Legislature tied the hands of judgment creditors, forcing them to garnish bank accounts containing only exempt Social Security funds to ascertain hypothetical possibilities that the judgment debtor "could have recently received [non-exempt] money through gifts, winnings or another windfall." *See* Defs.' Br. at 7. Accordingly, taking Hogue's factual allegations as true, Hogue has stated a claim upon which relief can be granted. Therefore Defendants' motion to dismiss Hogue's FDCPA claim is denied.

### B. *Iowa Fair Debt Collection Practices Act*

The Iowa Debt Collection Practices Act ("IDCPA") was modeled after the Model Consumer Credit Act as a "significant attempt to remedy debt collection abuses." William A. Reilly II, *Debt Collection Practices: Iowa Remedies for Abuse of Debtors' Rights,* 68 Iowa L.Rev. 753, 772 (1983). The IDCPA provides:

A debt collector shall not collect or attempt to collect a debt by means of an illegal threat, coercion or attempt to coerce. The conduct described in each of the following paragraphs is an illegal threat, coercion or attempt to coerce within the meaning of this subsection:

. . . . .

(f) An action or threat to take an action prohibited by this chapter or any other law.

Iowa Code § 537.7103(1)(f). Defendants state that because Hogue's IDCPA claim is premised on the violation of the FDCPA, the FDCPA claim is outcome determinative of the IDCPA claim. *See* Defs.' Br. at 4. However, Hogue states that Defendants violated the IDCPA by taking action prohibited by the Social Security Act, 15 U.S.C. § 407(a). *See* Pl.'s Resistance at 18. Regardless of whether Hogue's IDCPA claim is based upon a violation of the FDCPA or the Social Security Act, Hogue has stated a claim upon which relief can be granted. Iowa cases provide some guidance as to whether Defendants' actions would constitute a violation of the IDCPA. In *Monahan Loan Serv., Inc. v. Janssen,* 349 N.W.2d 752 (Iowa 1984), the Supreme Court of Iowa held that filing a consumer credit action in the wrong county constituted an unfair debt collection practice under the IDCPA. *See* 349 N.W.2d at 754. The *Monahan* court explained that, because § 537.5113 required suits to be brought in the county where the debtor resides, the debt collector violated § 537.7103(1)(f) when it filed suit in the wrong county. *See id.* The Supreme Court of Iowa rejected the debt collector's contention that "this was not ... the type [of violation] for which penalties and attorney fees [could] be awarded[,]" [8] and applied the plain meaning of the statutory language. *See id.* Thus,

---

[8]. A person engaging in unfair debt collection practices under § 537.7103 is subject to statutory penalties. *See* Iowa Code § 537.5201(1)(y).

Defendants' knowing garnishment of Hogue's exempt Social Security funds, in violation of the Social Security Act may well constitute a violation of the IDCPA.[9] Accordingly, Defendants' motion to dismiss Hogue's IDCPA claim is denied.

## C. *Iowa Consumer Credit Code*

The Iowa Consumer Credit Code (the "ICCC") governs all consumer transactions in Iowa, including collection or enforcement of transactions, without regard to where a transaction is entered or modified. *See Midwest Check Cashing, Inc. v. Richey,* 728 N.W.2d 396, 399 (Iowa 2007) (quoting Iowa Code § 537.1201(1)(c)). The ICCC, patterned on the Uniform Consumer Credit Code, was enacted to "broadly [ ] protect consumers in relatively small credit transactions." *Equilease Corp. v. Smith,* 405 N.W.2d 803, 805 (Iowa 1987). Thus, the ICCC "shall be liberally construed and applied" to "[p]rotect consumers against unfair practices by . . . collectors of consumer credit. . . ." Iowa Code § 537.1102(1), (2)(d). Hogue alleges that Defendants' actions were unconscionable, in violation of the ICCC § 537.5108(2). Section 537.5108(2) provides:

> With respect to a consumer transaction . . . if the court as a matter of law finds in an action other than a class action, that a person has engaged in, is engaging in, or is likely to engage in unconscionable conduct in collecting a debt arising from that transaction, the court may grant an injunction and award the consumer any actual damages the consumer sustained.

Moreover, subsection 5 notes, "[i]n applying subsection 2, violations of section 537.7103 [the IDCPA] shall be considered, among other factors, as applicable." Iowa Code § 537.5108(5). In addition to

§ 537.7103 violations, "Iowa courts have considered as factors unfair surprise, lack of notice, disparity of bargaining power and substantive unfairness." *Besta v. Beneficial Loan Co. of Iowa,* 855 F.2d 532, 535 (8th Cir.1988) (citing *Home Fed. Savs. & Loan Ass'n of Algona, Iowa v. Campney,* 357 N.W.2d 613, 618 (Iowa 1984)). Here, taking all of Hogue's allegations as true and drawing all inferences in favor of Hogue, she has stated a claim upon which relief can be granted. Defendants' action in knowingly garnishing Hogue's exempt Social Security funds can be considered unconscionable under the ICCC. Moreover, the fact that Defendants' actions may have also violated the IDCPA lends further support to the contention that Defendants could have violated § 537.5108(2). *See* Iowa Code § 537.5108(5). Accordingly, Defendants' motion to dismiss Hogue's ICCC claim is denied.

## D. *Abuse of Process*

The Iowa Supreme Court has explained that "[a]buse of process is 'the use of the legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 398 (Iowa 2001) (quoting *Fuller v. Local Union No. 106 of United Bhd. of Carpenters & Joiners of Am.,* 567 N.W.2d 419, 421 (Iowa 1997)). Thus, "[t]he essence of this tort is an improper purpose for using the legal process." *Fuller,* 567 N.W.2d at 421. "Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself. This amounts to a form of extortion in which a lawfully used process is pervert-

---

9. Even if the Court accepts Defendants' characterization that the IDCPA claim is premised on Defendants' violation of the FDCPA, Hogue's IDCPA claim would still survive the motion to dismiss, as Defendants concede that the FDCPA claim is outcome determinative of the IDCPA claim. *See* Defs.' Br. at 4.

ed to an unlawful use." *Id.* (internal citation and quotation omitted).

 The elements of an abuse of process claim are: (1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) resulting damages. *Thomas v. Marion County*, 652 N.W.2d 183, 186 (Iowa 2002) (citing *Fuller*, 567 N.W.2d at 421–22). "The first element can generally be shown by the use of a legal process against the plaintiff." *Gibson*, 621 N.W.2d at 398 (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990)). Here, Defendants' garnishment proceeding is use of a legal proceeding sufficient to meet the first element. The second element, however, is a high burden that requires the showing of an "improper motive in using the legal process." *Wilson*, 464 N.W.2d at 266; *see Thomas*, 652 N.W.2d at 183. The plaintiff, then, must show that the defendant "used the legal process *primarily* for an impermissible or illegal motive." *Wilson*, 464 N.W.2d at 266. Thus, there is no action for abuse of process when the process "is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* at 267.

 In her Complaint, Hogue alleges that "[t]he legal process was used in an improper manner and for the impermissible purpose of attempting to obtain exempt funds." Compl. ¶ 27. Hogue contends that Defendants "knew [her] account held only exempt funds" but nonetheless garnished the account, and that Defendants have "demonstrated a pattern and practice of garnishing funds that it knows, or should know, are exempt." *Id.* ¶ 11. That is, Defendants used a legal process (garnishment) in an impermissible manner to reach exempt funds prohibited by law, and or impermissibly used a garnishment proceeding as a form of discovery device. *See* Pl.'s Resistance at 19. The Court cannot conclude that this is not an improper purpose as a matter of Iowa law. *Cf. Reis v. Walker*, No. 06–2825, 2007 WL 1804391, **1–2, 2007 U.S.App. LEXIS, at *3–4 (8th Cir. June 25, 2007) (stating that dismissal of abuse of process claim was proper because "coercing a settlement" is not an improper purpose as a matter of Iowa law). Thus, viewing the Complaint in the light most favorable to Hogue, as this Court must on a Rule 12(b)(6) motion, the pleadings contain allegations and supporting facts sufficient to satisfy the second element of the abuse of process. The third and final element for a claim of abuse of process is resulting damages from the improper or unauthorized use of the legal process. Here, as a result of Defendants' garnishment, Hogue was effectively cut off from money essential to her health and well-being. *See id.* at 4 (noting that "the consequences of [garnishments of Social Security funds] to recipients ... can be devastating," and adding that "[e]ven recipients who get their funds released are subjected to a myriad of fees such as bank charges, bad check fees, overdraft fees, etc."). Although Hogue refers to the damages caused by garnishment of Social Security funds generally, it is reasonable to infer that the hardships she referred to were experienced by her personally, at least to some degree. As such, Hogue has sufficiently pled damages. Accordingly, Defendants' motion to dismiss Hogue's abuse of process claim is denied.

## VI. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (Clerk's No. 9) is DENIED.

IT IS SO ORDERED.