**JOHN DEERE LEASING COMPANY, Appellee,**

v.

**Stanley L. FRAKER, Appellant.**

**No. 85–1218.**

Supreme Court of Iowa.

Nov. 12, 1986.

Rehearing Denied Dec. 12, 1986.

Alfredo G. Parrish and Elizabeth S. Kruidenier of Parrish & Kruidenier, Des Moines, for appellant.

Craig R. Hastings of Clark, Clark & Hastings, Ames, for appellee.

Considered by HARRIS, P.J., and Mc-GIVERIN, WOLLE, LAVORATO, and NEUMAN, JJ.

WOLLE, Justice.

The plaintiff John Deere Leasing Company (Deere) repossessed from defendant Stanley Fraker a leased combine harvester, sold it at private sale for much less than Fraker owed, and obtained summary judgment for the $25,045.21 deficiency. We transferred the case to the court of appeals which upheld the summary judgment. Fraker contends his affidavit in resistance to Deere's motion for summary judgment generated a genuine issue of material fact concerning the commercial reasonableness of the private sale. We agree and therefore vacate the decision of the court of appeals, reverse the summary judgment, and remand for further proceedings in the district court.

In April of 1982 Fraker and Deere entered into a five-year leasing agreement which obligated Fraker to make ten semi-annual $12,219.73 payments to Deere in exchange for the use of a combine and attachments. The lease also gave Fraker the option to purchase the equipment at the expiration of the lease for an additional $26,242.75. The lease provided that upon default Deere had the right to take possession of the leased equipment and sell it. After Fraker had used the combine for one year he was unable to make further payments. In May of 1983, he returned the combine to Deere. The following December, Deere sent notice of private sale to Fraker and over 300 John Deere dealers in Iowa and Illinois. The combine was sold on January 20, 1984 for $63,227.00, and Fraker was notified of a $25,045.21 deficiency.

Deere filed this action to recover the deficiency and moved for summary judgment. In resisting the motion, Fraker contended that "Deere did not give him adequate notice of a private sale, nor did [Deere] sell the property by reasonable commercial standards." He also filed his personal affidavit which stated in part:

4. I was told [by Deere representatives] that if I would voluntarily bring my combine in that [Deere] would sell my lease and that my payment at the most would not exceed $5,000....

10. The combine stayed at Ewing Implement [Deere's dealer] throughout the harvest season and was not sold until January of the following year.

11. January is the most difficult time to sell a combine and would bring only the minimal price. Further, to sell a combine in January is not commercially reasonable. The combine was sold to another dealer and it is my belief that only dealers were contacted relative to the sale of this combine.

12. John Deere did not seek to sell the combine in a commercially reasonable manner and did not seek to minimize the deficiency.

The trial court granted Deere summary judgment and the court of appeals affirmed. Both the summary judgment court and the court of appeals concluded that Fraker's resistance was inadequate to generate a genuine issue of material fact, as required by Iowa Rule of Civil Procedure 237(e). We disagree. Although notice of the private sale was adequate, Fraker's affidavit did generate a genuine factual issue on the commercial reasonableness of the sale.

I. *Review of this Summary Judgment Record.*

Well-settled legal principles govern our review of summary judgment proceedings. *See Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986); *Schermer v. Muller,* 380 N.W.2d 684, 687 (Iowa 1986). Summary judgment is functionally equivalent to a directed verdict. *Id.* We view the summary judgment record in the light most favorable to Fraker, giving him as the resisting party the benefit of every legitimate inference that reasonably can be deduced from the evidence. *Knapp v. Simmons,* 345 N.W.2d 118, 121 (Iowa 1984). The burden was on Deere to show the absence of a fact issue, and Fraker will prevail if his affidavit disclosed "specific facts showing there

is a genuine issue for trial." *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985); Iowa R.Civ.P. 237(e).

## II. *Adequacy of the Notice of Private Sale.*

We find no merit in the first issue presented by Fraker's resistance, the contention that he did not receive adequate notice of the private sale. Deere's written notice satisfied the applicable statutory notice requirement found in Iowa Code section 554.9504(3) (1981) (all references are to the 1981 Code of Iowa).

Article 9 of the Iowa Uniform Commercial Code applied to this lease agreement because the parties have treated the lease as one intended to be a security agreement. *See* Iowa Code § 554.1201(37) (lease may be "security interest"); § 554.9102(1) (article 9 applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property ...."); § 554.9105(4) (article 1 general definitions apply to article 9).

Section 554.9504(3), governing notice, gave Deere the option to dispose of the combine "by public or private proceedings" so long as Fraker was given, in writing, "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made...." The purpose that statute serves is to give debtors like Fraker an opportunity to arrange refinancing and redeem repossessed property before any sale may take place. *See John Deery Motors, Inc. v. Steinbronn,* 383 N.W.2d 553, 555–56 (Iowa 1986).

■ Deere's written letter to Fraker, entitled "Notice of Private Sale," gave him sufficient opportunity to purchase the harvester, advised him a private sale was contemplated, and plainly satisfied the statutory notice requirement.

## III. *Commercial Reasonableness of the Private Sale.*

The same statute that requires adequate written notice of a sale of collateral also mandates that "every aspect of the disposition including the method, manner, time, place and terms *must be commercially reasonable.*" Iowa Code § 554.9504(3) (emphasis added). A subsequent statutory provision in article 9, however, explains:

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.

Iowa Code § 554.9507(2). Fraker's affidavit resisting summary judgment pointedly attacked this private sale as commercially unreasonable in two respects—poor price and poor timing.

■ The commercial reasonableness of a sale of collateral is ordinarily a question of fact. *United States v. Conrad Publishing Co.,* 589 F.2d 949, 954 (8th Cir.1978); *United States v. Terrey,* 554 F.2d 685, 693 (5th Cir.1977); R. Dole, *The Fundamentals of Article 9 of the Uniform Commercial Code* § 6.12 at 279–80 (1982). At the outset the secured party must choose between a private and a public sale, and that choice may itself present a question of fact on commercial reasonableness of the sale of collateral. *See Terrey,* 554 F.2d at 693; *Ridley v. First National Bank,* 87 N.M. 184, 187, 531 P.2d 607, 610 (Ct.App.1974); *cf.* Iowa Code Ann. § 554.2706, Uniform Commercial Code Comment (4) (West 1967) (in choosing between a public and private sale in the context of resale of goods after contract breach, "the character of the goods must be considered and relevant trade practices and usages must be observed.").

One of the specific "terms" of sale which is relevant to the issue of commercial reasonableness is the adequacy or insufficiency of the price itself. *Beneficial Finance Co. v. Reed,* 212 N.W.2d 454, 458 (Iowa 1973); *First National Bank v. Rose,* 188 Neb. 362, 364, 196 N.W.2d 507, 509 (1972); *see* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 26–11 at 1119 (2nd ed. 1980). A clear inference from Fraker's affidavit is that the price Deere received was inadequate, causing a deficiency five times greater than the $5,000.00 Deere's representatives had promised according to that affidavit. Moreover, the discrepancy in price is only one of an aggregate of circumstances that should be emphasized in determining whether a sale was commercially reasonable. *Monahan Loan Service, Inc. v. Janssen,* 349 N.W.2d 752, 757 (Iowa 1984). A second circumstance of this private sale, emphasized in Fraker's affidavit, was that Deere held the combine from May until the end of the fall harvest season without renting or attempting to sell it, then gave notice in December and sold it in January. Deere conceded the obvious: it is more difficult to sell a harvester in January than in the fall of the year.

The burden of proving commercial reasonableness was on Deere, the secured party. *Beneficial Finance Co.,* 212 N.W.2d at 461. Deere also had the burden to show the absence of a genuine fact issue, with the record viewed in the light most favorable to Fraker. *Tasco, Inc., v. Winkel,* 281 N.W.2d 280, 282 (Iowa 1979). On this summary judgment record, considering all the elements of this private sale as an aggregate, a finder of fact could reasonably conclude that the price Deere received for the combine was grossly inadequate, the timing of the sale inappropriate, and consequently that Deere had not satisfied those burdens on the question of commercial reasonableness.

We reverse the summary judgment granted Deere and remand for further proceedings in the district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; REMANDED.