**Tim BARNHOUSE and Aileen Barnhouse, Appellees,**

v.

**HAWKEYE STATE BANK, Appellant.**

**No. 86–99.**

Supreme Court of Iowa.

May 13, 1987.

Charles T. Traw and Thomas Diehl of Leff, Leff, Leff, Haupert & Traw, Iowa City, for appellant.

Thomas D. Hanson and Mark D. Sherinian of Hanson, Bjork & Russell, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, LAVORATO, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

Plaintiffs Tim and Aileen Barnhouse[1] brought this tort action against defendant Hawkeye State Bank (Hawkeye) of Iowa City, based on its activities surrounding a seizure of Barnhouse's car parts in which Hawkeye held a security interest. Trial court entered judgment on jury verdicts against Hawkeye for $40,000 actual damages and $60,000 punitive damages. The court further granted Barnhouse's claim for declaratory judgment, based on the sale of two items of the collateral without notice to him, and barred Hawkeye from enforcing its preexisting judgments against Barnhouse's personal property, other than the car parts already in its possession. Hawkeye has appealed. We affirm in part, reverse in part, and remand.

September 1977, Barnhouse borrowed $35,000 from Hawkeye to buy the assets and inventory of an auto parts and repair business he intended to operate as Esprit Imports, Inc. To secure this purchase money loan, Barnhouse executed a security agreement granting Hawkeye a security interest in "[a]ll parts, inventory, equipment and accounts receivable" on the business premises, and a second mortgage on his home. For further security the bank took an assignment of Barnhouse's lease on the business premises. The business of "Esprit Imports" later deteriorated and Hawkeye loaned $17,500 in 1978 and $10,-

---

1. For convenience and clarity Tim Barnhouse (Barnhouse) will be referred to as the sole plaintiff in this opinion.

000 in 1980 to Tim Barnhouse and his father, Vernon.

By 1981 Esprit Imports was in serious financial trouble and the above loans were in default. Barnhouse was attempting to sell the business and the bank was deferring collection action. Finally, with the Internal Revenue Service seeking to collect unpaid tax obligations against Esprit Imports and Barnhouse, Hawkeye obtained judgments against Tim and Aileen Barnhouse for $17,797.49 and against Tim and Vernon Barnhouse for $30,282.08.

Tim and Aileen Barnhouse left on vacation to Holland on August 8 or 9, 1982. At trial James Schulze, a Hawkeye officer, testified that on August 13, 1982, John McGinnis III, owner of the Esprit premises, told him inventory was being removed from the closed-up business at night. August 14, 1982, the bank, after consultation with its attorney, removed the parts inventory from the Esprit premises. In the removal process two articles were sold to observers and the proceeds credited on the Barnhouse indebtedness.

June 28, 1983, Barnhouse filed this damage action asking for actual and punitive damages for negligence, conversion, and trespass in three separate counts, based on the manner the bank entered the premises, removed the collateral, and stored it. The fourth count sought a declaratory judgment that Hawkeye had waived its right to collect its "deficiency" judgments by selling some of the collateral without notice to Barnhouse, in violation of Iowa Code section 554.9504(3) (1981).

Barnhouse's negligence, conversion, and trespass counts were submitted to the jury. The court submitted three specifications of negligence: (1) breach of the peace, (2) failure to use reasonable care in the custody and preservation of the collateral, and (3) failure to dispose of the collateral in a commercially reasonable manner. The jury found for Hawkeye on the conversion and trespass claims, but on the negligence claim awarded Barnhouse $40,000 in compensatory damages and $60,000 in punitive damages.

After trial the court ruled in favor of Barnhouse on his declaratory judgment claim, and barred Hawkeye from enforcing its preexisting judgments except against the collateral in its possession and against Barnhouse's real estate, upon which the bank held a second mortgage.

In this appeal Hawkeye has raised a number of issues that we address in the divisions that follow.

## I. Instruction on measure of compensatory damages.

In instruction number 31 the court informed the jury on the measure of compensatory damages:

> The measure of recovery for damages to the plaintiffs' inventory is the difference in reasonable market value immediately before the taking, and the reasonable market value at present, as shown by the evidence, but not exceeding $80,000, this being the amount claimed.

In its exception taken at trial Hawkeye conceded this instruction was "a correct statement of the law," but asserted the "market" in this instance should be further defined as a distressed market "for goods seized by a creditor."

A contention similar to that Hawkeye advances was raised and rejected in *Kerr v. Tysseling,* 239 N.W. 233, 234 (Iowa 1931) (" '[M]arket value' and 'fair and reasonable market value' ... are ordinary English terms as well understood by everybody acquainted with the language as their synonyms would be."). *See also Clapp v. Cass County,* 236 N.W.2d 850, 861 n. 2 (N.D. 1975).

In its appeal brief Hawkeye seeks to amplify its trial exception by pointing out that two statutes relied on by Barnhouse in his specifications of negligence refer to collateral sold on a "recognized market." *See* Iowa Code §§ 554.9504(3), 554.9507(2) (1981). Barnhouse's brief responds that the term "recognized market," found in these statutes, is used in the context of when notice to the debtor is required and whether the creditor has acted in a commercially reasonable manner, not in the context of a formula for fixing damages.

In its reply brief Hawkeye concedes this point, but finally asserts "trial court abused its discretion in failing to inform the jury that it should consider the evidence showing various markets, decide an applicable or relevant market and then proceed to determine value for the purposes of damages."

■ Hawkeye's final contention can be inferred from its trial exception to damage instruction 31 only with an imaginative leap. It is true that several experts expressed various opinions of the value of the parts inventory, both in the hands of Barnhouse and later in the possession of Hawkeye. In view of the record in this regard, however, the jurors could not have been misled when they were instructed to determine reasonable market value at the relevant times "as shown by the evidence." We find no trial court error in rejecting Hawkeye's exception to the measure of damage instruction.

## II. *Punitive damages.*

Hawkeye next asserts trial court erred in failing to grant its motion for new trial, grounded on its contention the jury's award of $60,000 in exemplary damages was not supported by substantial evidence and resulted from the passion and prejudice of the jury.

Hawkeye argues the jury rejected Barnhouse's claims grounded on conversion and trespass, and therefore must have rejected the breach-of-peace specification of negligence based on those asserted acts. There remained, Hawkeye contends, only the specifications directed to its conduct in taking possession of and selling items from the parts inventory. While conceding its negligence in this regard may have damaged the collateral, Hawkeye insists there was no substantial evidence of legal malice, bad motives, or an intention to damage Barnhouse. Thus, Hawkeye argues, the punitive damage award should be set aside.

Barnhouse contends the decision to seize the parts inventory and the manner in which it was accomplished demonstrated the required degree of recklessness.

■ An award of punitive damages is appropriate when a party acts with actual or legal malice. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 167 (Iowa 1984). Actual malice is shown by such things as personal spite, hatred, or ill will. Legal malice is established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another. *See Klooster v. North Iowa State Bank*, 404 N.W.2d 564, 572 (Iowa 1987); *Beeck*, 350 N.W.2d at 167. More than mere negligence must be shown. *Cedar Falls Bldg. Center, Inc. v. Vietor*, 365 N.W.2d 635, 640 (Iowa App.1985).

Hawkeye suggests that as a matter of public policy and in view of the ongoing legislative debate relating to punitive damages, we in some way should modify our present rule that when reasonable minds could differ on the punitive damage issue it should be submitted to the jury. Although recent legislation not applicable here may have provided limited relief for defendants generally,[2] we are not persuaded to make a retroactive rule change while this whole area is undergoing continuing legislative study.

Hawkeye introduced testimony that its officer Schulze was told inventory was being stolen from the Esprit premises and that it seized the parts to protect them in Barnhouse's absence and in order to avoid any defense the guarantor, Vernon Barnhouse, might otherwise raise.

Although this court sitting as a trier of fact might well have reached a different result, there also was evidence from which the jury could have inferred Hawkeye waited until Barnhouse was in Holland to visit relatives and then hastily, and without taking any precautions, decided to seize the parts inventory to head off action by the

---

**2.** Legislation adopted in 1986, *inter alia*, requires the court to direct the jury to answer a special interrogatory: "Whether the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(a) (1987).

owner of the premises, who held a substantial judgment for unpaid rent.

Under this record the jury could have found that Hawkeye, in seizing and storing the collateral, made no reasonable attempt to protect the parts inventory. Several expert witnesses opined Hawkeye's manner of seizing and storing the property rendered it virtually worthless. There was compelling evidence that different types of inventory were indiscriminately and hopelessly mixed; heavy pieces of inventory were placed on smaller, more delicate, pieces; no significant attempt was made to keep the inventory in any type of segregated or useful pattern; and because of where the inventory was stored, parts eventually rusted and became useless.

■ The evidence would support a jury finding this was not a case in which minor damage occurred during the move, giving rise to no more than a negligence claim. Rather, the evidence was sufficient to support a jury conclusion that Hawkeye's acts evidenced a reckless and willful disregard for Barnhouse's rights. *See Willson v. City of Des Moines*, 386 N.W.2d 76, 85 (Iowa), *cert. denied*, — U.S. —, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986).

We hold the jury's award of punitive damages is supported by substantial evidence, and trial court did not err in overruling Hawkeye's motion for new trial.

### III. *Failure to give notice.*

Hawkeye's loans to Barnhouse were secured by a security interest in the inventory and equipment (collateral) located at Esprit. As Hawkeye was seizing the collateral two months after obtaining default judgments, it sold to bystanders two pieces of property: a bucket of bolts and a broken engine analyzer found in the mud on the outside of the building. The bolts were sold for $25, the analyzer for $35, and the proceeds were credited against Barnhouse's indebtedness. When Barnhouse's lawyer complained, Hawkeye promptly but unsuccessfully sought to repurchase these items of collateral. The analyzer had been resold; the bolt buyer may have been con-

tacted by Barnhouse. In any event, he refused to sell the bolts.

No notice was given to Barnhouse before this collateral was sold. In the count of his petition asking for declaratory judgment, Barnhouse alleged Hawkeye's failure to give notice waived its right to collect any "deficiency" beyond the value of the collateral seized. Trial court agreed the lack of notice precluded Hawkeye from recovering a "deficiency judgment," at least with respect to any of Barnhouse's personal property other than the collateral the bank had seized.

Barnhouse's claim is rooted in Iowa Code section 554.9504(3). This provision in relevant part provides:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....

Iowa Code § 554.9504(3) (1981).

We recently reiterated the purpose behind the requirement of notice in *John Deery Motors, Inc. v. Steinbronn*, 383 N.W.2d 553 (Iowa 1986), where we wrote:

> The notice provision in Code section 554.9504(3) is obviously intended for the benefit and protection of the debtor. It affords him at least an opportunity to bid at the sale and protect himself from an inadequate sale price. A debtor unable or unwilling to exercise his section 554.-9506 redemption right may still wish to bid on the property or encourage others to do so to insure a fair sale price which would minimize or eliminate a deficiency. Even if it might be determined he could not have protected his interest the law requires he be given the opportunity.

*Id.* at 555 (quoting *Herman Ford-Mercury, Inc. v. Betts*, 251 N.W.2d 492, 495 (Iowa 1977)).

Violations of this notice requirement have given rise to two basic approaches with respect to sanctions. We first discussed these two concepts in *'Beneficial*

*Finance Co. v. Reed*, 212 N.W.2d 454, 459–61 (Iowa 1973).

Under the first approach, a failure to provide adequate notice bars a creditor that has exhausted its security interest from seeking a deficiency judgment. This theory imposes an irrebuttable presumption that the value of the collateral equals the value of the debt or judgment obtained. From this it might be argued that if the creditor has obtained a judgment prior to his or her failure to give notice, the exhaustion of the secured collateral will be viewed as total satisfaction of the judgment against the debtor.

A second and less harsh sanction has been adopted by a number of jurisdictions. That approach recognizes a rebuttable presumption that the value of the collateral equals the value of the debt. *See United States v. Whitehouse Plastics*, 501 F.2d 692, 695–96 (5th Cir.1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975); *First Galesburg Nat'l Bank v. Joannides*, 103 Ill.2d 294, 301–02, 82 Ill.Dec. 646, 649, 469 N.E.2d 180, 183 (1984).[3] In these jurisdictions, to the extent the reasonable market value of the collateral is more than the price received, the creditor is barred from recovering that amount. However, to the extent the creditor can show the sale is commercially reasonable and the reasonable market value is less than the total amount of the debt, a deficiency judgment may be obtained.

■ Iowa has adopted and consistently applied the first sanction for failing to give notice, thus barring any recovery beyond that obtained through the sale of the security property. *See, e.g., John Deery Motors, Inc.*, 383 N.W.2d at 555; *Rock Rapids State Bank v. Gray*, 366 N.W.2d 570, 573–74 (Iowa 1985); *Stockdale, Inc. v. Baker*, 364 N.W.2d 240, 243 (Iowa 1985); *Lloyd's Plan, Inc. v. Brown*, 268 N.W.2d 192, 195 (Iowa 1978); *Herman Ford-Mercury, Inc.*, 251 N.W.2d at 496; *Federal Deposit Ins.*

*Corp. v. Farrar*, 231 N.W.2d 602, 605–06 (Iowa 1975); *Twin Bridges Truck City, Inc. v. Halling*, 205 N.W.2d 736, 738–39 (Iowa 1973). Barnhouse argues we again should apply this absolute bar in the present case. We conclude the absolute bar, while appropriate in prior cases, is inapplicable here for several reasons.

First, this transaction was not a sales transaction in which the goods purchased bore a direct relation to the debt incurred. Rather, Barnhouse's loan was secured by a myriad of collateral, including inventory, equipment, and accounts receivable. This collateral, neither as a whole nor separately, necessarily bore any relationship to the debt incurred. *See Monahan Loan Serv., Inc. v. Janssen*, 349 N.W.2d 752, 757 (Iowa 1984). Thus, any assumption the secured collateral necessarily reflects the amount of the debt is less compelling.

Second, the amount of the collateral sold without notice was but a bare fraction of the total collateral both as to bulk and as to value. Barnhouse argues the value of this collateral is approximately $1300. Hawkeye obtained $60 for the two items when they were sold. The judgment against Barnhouse is approximately $50,000.

Finally, we conclude the underlying purposes of Iowa Code section 554.9504(3) have not been frustrated in this case. *See John Deery Motors, Inc.*, 383 N.W.2d at 555. In our prior decisions, the entire collateral was disposed of before notice was given to the debtor. Even in those cases involving more than one piece of collateral (*i.e.*, equipment or inventory) a deficiency judgment was not sought until all of the collateral had been liquidated. *See, e.g., Rock Rapids State Bank*, 366 N.W.2d at 571–72 (involving equipment used in a restaurant); *Stockdale*, 364 N.W.2d at 241–43 (involving equipment necessary to run a body shop). Once this collateral was sold without notice, the debtor was entirely powerless to protect his or her interest.

---

**3.** This less stringent sanction is premised in part on the statutory provision that provides a remedy for the debtor in such situations:

> If the disposition has occurred the debtor … has a right to recover from the secured party

> any loss caused by a failure to comply with the provisions of this Part.

Iowa Code § 554.9507(1) (1981); *see First Galesburg Nat'l Bank*, 103 Ill.2d at 299–300, 82 Ill.Dec. at 648, 469 N.E.2d at 182.

As a result, the purposes of Iowa Code section 554.9504(3) were irrevocably frustrated.

Here, however, most of the collateral involved has not been sold. Unless he waives notice and sale, upon proper notice Barnhouse will have an opportunity to purchase the collateral or otherwise attempt to guarantee the best possible price is obtained. Barnhouse indicated in oral submission he was abandoning the property as being without value. If that is true, of course, the jury award compensated Barnhouse for the full value of the seized inventory less only the two sold items. Because the underlying purposes of Iowa Code section 554.9504(3) were not frustrated by the two sales, however, we are not inclined to apply the absolute bar against the full satisfaction of Barnhouse's debt.

We believe the only penalty, if any, that should be suffered by the bank is with respect to collateral that in fact was sold without notice. Upon remand, to the extent the court finds that the two items of collateral were sold below their reasonable market value on the date of the sales, that amount shall be credited against Barnhouse's debt. The reasonable market value of these items of collateral will be as shown on Barnhouse's business records immediately before the sales unless the bank proves a lesser value by a preponderance of the evidence.

## IV. *Set-off.*

Hawkeye asserts trial court abused its discretion in denying its motion to amend its pleading to conform to the proof adduced at trial. Hawkeye sought to amend its pleading to include a counterclaim for equitable set-off, premised upon its judgments already rendered against Barnhouse.

The rule of civil procedure implicated by Hawkeye's motion to amend is rule 106:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. . . .

Iowa R.Civ.P. 106.

▪ Our rule permitting amendments to conform to the proof always has received liberal interpretation. *Smith v. Village Enters., Inc.,* 208 N.W.2d 35, 37 (Iowa 1973). " 'To allow such amendments is the rule, not the exception.' " *Twin Bridges Truck City, Inc. v. Halling,* 205 N.W.2d 736, 739 (Iowa 1973) (quoting *W. & W. Livestock Enters., Inc. v. Dennler,* 179 N.W.2d 484, 488 (Iowa 1970)). Although the decision whether to grant such an amendment is within the sound discretion of the trial court, *Gosha v. Woller,* 288 N.W.2d 329, 332 (Iowa 1980), when parties voluntarily offer evidence on an issue, a denial of a subsequent motion to conform will constitute an abuse of discretion, *see Dulin v. Washington Nat'l Ins. Co.,* 257 Iowa 1007, 1012–14, 135 N.W.2d 635, 638 (1965); *see also B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 283–84 (Iowa 1976); *Laverty v. Hawkeye Security Ins. Co.,* 258 Iowa 717, 725, 140 N.W.2d 83, 88 (1966) ("Where the parties voluntarily offer evidence on an issue the denial of an amendment to conform to such proof would be beyond fair discretion.").

Here Hawkeye's pleadings set out the judgments against Barnhouse, who admitted these allegations. Several of the bank's affirmative defenses were premised on the concept these judgments were a valid and existing obligation, enforceable against Barnhouse's assets. The judgments, in the sums of $17,797.49 and $30,-282.08, were introduced into evidence. Barnhouse testified Hawkeye had obtained the judgments against him and that he had allowed this to occur by default. Moreover, Barnhouse sought to nullify the judgments by his count IV declaratory judgment claim that failure to give notice of sale rendered the judgments "satisfied in full."

In resisting the application to amend, Barnhouse asserted that had the counterclaim been made timely his "waiver" contention (pled in count IV of his petition for a declaratory judgment) would have been submitted to the jury. Barnhouse further

asserted he would have responded with the defense that there was a "contract between Vernon Barnhouse and the defendant," and other defenses which he did not identify or describe.

The court summarily denied Hawkeye's application, "for the reasons asserted by the plaintiffs."

We find no merit in Barnhouse's contentions. Count IV of his petition was a legal issue for the court on uncontested facts and was so decided—erroneously we now hold—by the court. Nor does Barnhouse's contention there was some agreement to pay later what he then owed—unsupported by any consideration—affect the viability of the judgments as a set-off. *See Ritchie v. Hilmer*, 254 Iowa 309, 312–15, 117 N.W.2d 443, 445–47 (1962).

In the final analysis, Hawkeye's judgments stood unchallenged for more than one year before Barnhouse filed a petition containing a count that sought an injunction against execution, based on the sale of two pieces of collateral without notice. Barnhouse allowed the time to challenge the judgments to pass. *See* Iowa R.Civ.P. 252 and 253. Nor does he now challenge the judgments as void for lack of jurisdiction or on other grounds.

Indeed it would be anomalous if in this litigation Barnhouse was to be paid in damages what he variously claims is the full value of the collateral seized by Hawkeye,[4] a generous sum for punitive damages, and in addition be relieved from paying the judgments representing the sums that he borrowed, some of which was used to buy that collateral. *See Ritchie*, 254 Iowa at 313, 117 N.W.2d at 446 ("By no method of calculation would defendant be entitled to the automobile or its value and at the same time be relieved of his original obligation to pay for the automobile.").

Set-off is a remedial process by which a court, upon petition of one party, reduces or cancels the claim of an adverse party. *See Jorge Constr. Co. v. Weigel Excavating & Grading Co.*, 343 N.W.2d 439, 442 (Iowa 1984). Among the grounds of independent equity jurisdiction for allowing set-off are special circumstances, including insolvency, that render it probable that a party will lose his or her demand and be compelled to pay the demand of the other. 20 Am.Jur.2d *Counterclaim, Recoupment and Setoff* § 26, at 247–48 (1965).

Although Iowa Rule of Civil Procedure 225 grew out of our adoption of the comparative negligence concept, not involved here, it incorporates some of the above rationale.[5] We hold, however, it has no application in the circumstances of this case.

After allowing opportunity for the notice and sale procedure outlined in division III, unless Barnhouse waives it, trial court shall offset the unsatisfied portion of Hawkeye's judgments against Barnhouse's judgment affirmed in this opinion. Costs are assessed fifty percent to Barnhouse and fifty percent to Hawkeye.

We affirm in part, reverse in part, and remand for further proceedings in conformance with this decision.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

**4.** Barnhouse's brief in resistance to Hawkeye's motion for new trial asserts the evidence disclosed the value of the inventory after the seizure was "next to nothing" and "nil." Under such contention the jury award of $40,000 would represent the full value of that personalty.

**5.** Iowa Rule of Civil Procedure 225 provides:
A claim and counterclaim shall not be set off against each other except by agreement of both parties or unless required by statute. On motion, however, the court, if it finds that the obligation of either party is likely to be uncollectible, may order that both parties make payment into court for distribution. If there are multiple parties and separate set-off issues, each set-off issue should be determined independently of the others. The court shall distribute the funds received and declare obligations discharged as if the payment into court by either party had been a payment to the other party and any distribution of those funds back to the party making payment had been a payment to him by the other party.
Iowa R.Civ.P. 225.