Joan KNIERIM, Appellant,

v.

FIRST STATE BANK, Appellee.

No. 91–402.

Court of Appeals of Iowa.

April 28, 1992.

Michael P. Mallaney and Thomas T. Tarbox of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellant.

Benjamin C. Clayton and Jeffrey K. Rosencrants of Diehl, Clayton, Cleverley & Rosencrants, Newton, for appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

In 1968 Joan Knierim and her brother, Leonard DeVries, entered into a partnership to operate a farm. Leonard performed the farm work, and Joan contributed financially. During the 1980s, both Leonard and the partnership encountered severe financial difficulties and defaulted on loans. In 1985 one of the partnership's secured creditors, the First State Bank of Lynnville (the bank), seized and sold various items of collateral (crops and livestock). However, after these sales a deficiency remained between the amount received from the sales and the amount of the debt.

In 1986 Leonard, individually, filed for bankruptcy protection. After the automatic stay was lifted the bank seized farm machinery in an attempt to satisfy the deficiency which remained after the bank's previous seizure and sale of other collateral. The bank sold all of the machinery, which was allegedly in bad repair, to Mark Norman, a used machinery dealer, for $13,500.

However, the bank failed to give prior notice of the sale to either Leonard or Joan. Neither had waived his or her right to notice. The bank had mistakenly believed the bankruptcy proceeding negated the notice requirement. Upon recognizing its mistake, the bank notified Leonard of the $13,500 offer and gave him ten days to meet that bid. The bank did not send notice to Joan.

Leonard met the bid and delivered the bank a cashier's check for $13,501. Notice was then sent by the bank to both Joan and Leonard advising them of the $13,501 bid. Joan took no action. Two weeks later the bank sent notice to both Joan and Leonard stating Leonard's bid was the highest and advising Joan she had ten days in which to submit a higher bid. Again, Joan took no action. Two days later, the bank sent notice to both Joan and Leonard stating Leonard's bid had been accepted. The bank then reassembled the machinery and returned it to Leonard. Because Mark Norman had sold some of the machinery to third persons and some of the machinery had been repaired, the process of reassembling the machinery and returning it to Leonard cost the bank over $20,000.

In the meantime the bank had filed an adversary proceeding in the bankruptcy court seeking a ruling that Leonard's debt to the bank was not dischargeable in bankruptcy due to alleged fraud by Leonard. The bankruptcy court found the circumstances of the machinery's disposition, pri-

marily the bank's breach of statutory notice requirements, precluded the bank from collecting its deficiency judgment against Leonard. The bankruptcy court concluded the bank had no deficiency claim against Leonard and, therefore, no debt existed which could be declared nondischargeable in bankruptcy.

Joan Knierim later filed the present declaratory judgment action against the bank in the Iowa District Court for Jasper County. Prompted by the bankruptcy court's ruling, Joan sought a determination that the bank's deficiency judgment was not collectible against her either. The district court denied Joan the relief she requested, and she has appealed. Because this action was tried in equity, our review is de novo. Iowa R.App.P. 4. On our review, we affirm the trial court.

I. *Notice of Sale.* Joan argues the bank failed to provide her, as a debtor, with notice regarding the private sale of its collateral. This failure, she asserts, precludes the bank from obtaining a deficiency judgment against her.

Iowa Code section 554.9504(3) (1991) provides in relevant part:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the Debtor, if the Debtor has not signed after default a statement renouncing or modifying the Debtor's right to notification of sale.

There is no question but that Joan is a debtor within the meaning of section 554.9504(3).

The purpose of this notice requirement is to provide the debtor with an opportunity to bid at the sale or to encourage others to do so in order that he or she might protect against an inadequate sale price. *Herman Ford–Mercury, Inc. v. Betts,* 251 N.W.2d 492, 495 (Iowa 1977). The notice requirement is enforced, in the various jurisdictions, by sanctioning the creditor. *Barnhouse v. Hawkeye State Bank,* 406 N.W.2d 181, 185–86 (Iowa 1987). Two approaches have developed in determining the sanction to be used. *Id.* Iowa courts employ the absolute bar rule which essentially involves the imposition of an irrebuttable presumption that the value of the collateral equals the value of the debt or judgment. *Id.* at 186. When applied the rule bars the creditor from obtaining a deficiency judgment against the debtor.

Other jurisdictions use a rebuttable presumption that the value of the collateral equals the value of the debt or judgment. *Id.* The rebuttable presumption approach merely shifts the burden of proof to the creditor to show that the two values are different. *See id.* (citing *United States v. Whitehouse Plastics,* 501 F.2d 692, 695–96 (5th Cir.1974), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975); *First Galesburg National Bank v. Joannides,* 103 Ill.2d 294, 301–02, 82 Ill.Dec. 646, 649, 469 N.E.2d 180, 183 (1984)).

In *Herman Ford Mercury, Inc. v. Betts,* 251 N.W.2d 492, 496 (Iowa 1977), the Iowa Supreme Court stated:

In *Federal Deposit Ins. Corp. [v. Farrar],* 231 N.W.2d [602] at 605 [Iowa 1975], this court clearly adopted the position that lack of notice defeats any claim to a deficiency judgment asserted by the secured party, a position inferentially approved in *Twin Bridges Truck City, Inc. v. Halling,* 205 N.W.2d 736 (Iowa 1973).

Although the authorities are split concerning which of the two interpretations of section 554.9507(1) is most appropriate, the position taken in *Federal Deposit Ins. Corp. v. Farrar,* enjoys substantial support. *See Washington v. First National Bank of Miami,* 332 So.2d 644, 645 (Fla.App.1976); *Gurwitch v. Luxurest Furniture Mfg. Co.,* 233 Ga. 934, 214 S.E.2d 373, 374 [1975]; *Camden National Bank v. St. Clair,* 309 A.2d 329, 332–333 (Me.1973); *Delay First Nat. B. & Tr. v. Jacobson Appliance,* 196 Neb. 398, 243 N.W.2d 745, 748; *Aimonetto v. Keepes,* 501 P.2d 1017, 1019 (Wyo.1972); *Skeels v. Universal C.I.T. Credit Corporation,* 222 F.Supp. 696, 702 (W.D.Pa.

1963), vacated on other grounds in 335 F.2d 846 (3 Cir.1964).

We adhere to the pronouncement in *Federal Deposit Ins. Corp.* as supported by the foregoing authorities and now hold compliance with section 554.9504(3) for notification as to the disposition of collateral security is a condition precedent to a secured creditor's right to recovery of any deficiency between the sale price of collateral and the amount of the unpaid balance.

*Id.*

However, in *Barnhouse v. Hawkeye State Bank,* the supreme court held the absolute bar rule was inapplicable in the case before it. 406 N.W.2d at 186. In *Barnhouse,* the debtor had borrowed approximately $50,000 from the bank to buy the assets of and to finance a business. *Id* at 182. The loans were secured by a variety of assets, including the inventory of the business. *Id.* The debtor defaulted. *Id.* Later, before any of the collateral had been sold, and while the debtor was on vacation, the bank was notified the inventory was being taken from the closed business at night. *Id.* The bank then proceeded to remove the inventory, and during the process, sold two items to observers. *Id.*

■ The court in *Barnhouse* set out three reasons for declining to apply the absolute bar rule: (1) the transaction giving rise to the security interest "was not a sales transaction in which the goods purchased bore a direct relation to the debt incurred", (2) "the amount of the collateral sold without notice was but a bare fraction of the total collateral both as to bulk and as to value [2.6 percent of value]", and (3) "the underlying purposes" of section 554.-9504(3) were not "frustrated" because most of the collateral had not been sold and the debtor would still be able to purchase or otherwise attempt to guarantee the best possible price was obtained for the remaining collateral. *Id.* at 186–87.

We think the rationale of the *Barnhouse* case is applicable here as well. All three prongs of the *Barnhouse* reasoning are satisfied by the facts of this case. First, the funds loaned to the partnership by the bank were operating loans rather than purchase money loans. Therefore, the transaction giving rise to the security interest was not a sales transaction in which the goods purchased bore a direct relation to the debt incurred. Second, the amount of the collateral in issue ($13,501) is a small fraction (8.3%) of the value of the total collateral ($161,760). Finally, and most importantly, the purpose of the notice requirement was not frustrated in this case. Despite the bank's initial failure to comply with the notice requirement, the bank reassembled the collateral at its own considerable expense. Notice was then given to Joan advising her that a bid for $13,501 had been received by the bank and that she had ten days in which to submit a higher bid. This notice was adequate to advise Joan a private sale of the collateral was contemplated and to give her sufficient opportunity to purchase the equipment. *See John Deere Leasing Co. v. Fraker,* 395 N.W.2d 885, 887 (Iowa 1986).

The bank's clumsy handling of the sale and initial failure to notify the debtors did not precluded the bank from taking remedial action. The bank's remedial action provided Joan with notice of the sale and an opportunity to guard against a low sale price. As such, we do not believe the absolute bar rule prohibits the bank from recovering any deficiency to which it may otherwise be entitled. We affirm on this issue.

■ II. *Commercial Reasonableness of Sale.* Joan next argues the bank should be precluded from recovering a deficiency judgment because its disposition of the collateral was not commercially reasonable. The commercial reasonableness of the sale is a question of fact, *Fraker,* 395 N.W.2d at 887, and the secured party bears the burden of proving the sale was commercially reasonable. *Beneficial Finance Co. v. Reed,* 212 N.W.2d 454, 461 (Iowa 1973). We are persuaded the private sale was commercially reasonable and affirm on this issue.

■ Together with its notice provision, Iowa Code section 554.9504(3) (1991) provides "every aspect of the disposition in-

cluding the method, manner, time, place and terms must be commercially reasonable." The adequacy or sufficiency of the price obtained is a factor to be considered in the "aggregate of circumstances" which should be examined in deciding whether a sale was commercially reasonable. *Fraker*, 395 N.W.2d at 888 (citing *Monahan Loan Service, Inc. v. Janssen*, 349 N.W.2d 752, 757 (Iowa 1984)).

■ We do not believe the bank's disposition of the collateral can fairly be characterized as ordinary. The bank did not advertise the equipment for sale but, instead, "put the word out" that bids were being sought. Furthermore, while two bids of $13,500 were received, the bank chose to sell to one of the two bidders without asking both for additional bids. The bank was forced to repurchase the equipment and lost over $6,775 in reassembling it only to resell it for an additional dollar to Leonard. There is also some dispute regarding the timing of the sale. Joan asserts the price obtained for the equipment would have been higher had it not been sold in January.

Nevertheless, the trial testimony establishes the price paid for the equipment was equal to or greater than its fair market value. The price obtained for the collateral, viewed in light of the aggregate of circumstances, leads us to believe the disposition of the collateral was made in a commercially reasonable manner. We affirm on this issue.

III. *Issue Preclusion.* Joan also argues the doctrine of issue preclusion supports her claim for declaratory relief. She contends the bankruptcy court's ruling prohibiting a deficiency judgment against Leonard precludes the bank from obtaining a judgment against her as well. The issue she asserts to be conclusively determined is the bankruptcy court's finding regarding the applicability of the absolute bar rule to the bank's efforts to obtain a deficiency judgment against her co-debtor.

■ Issue preclusion or collateral estoppel is part of the larger doctrine of res judicata. *See* A. Vestal, *Res Judicata/Preclusion* V–15 (1969). Underlying the doctrine is the societal interest in providing an end to litigation. *Id.* The doctrine gives force to the concept that retrial of a matter which has been fully and fairly litigated is merely undesirable harassment which our judicial system cannot afford. *See id.* at V–16. On the other hand, the interest in rendering decisions on the merits of the case, rather than through the mechanical operation of technical rules, militates in favor of allowing the courts to reexamine issues previously decided. *See id.* at V–261 (citing *NAACP v. Alabama*, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); Vestal, *Sua Sponte Consideration in Appellate Review*, 27 Fordham L.Rev. 477 (1959)).

■ In analyzing Joan's reliance on the doctrine, we recognize the success or failure of Joan's claim depends, in general, upon the degree of similarity between the circumstances of the prior and present actions. In examining the similarity or lack thereof between the actions, we must focus on three aspects of the two proceedings: (1) the adjudicating bodies in both, (2) the nature of the issues involved in both, and (3) the parties involved in both. *See id.* at V–15.

A. *The Adjudicating Bodies.* We first, consider the nature of the courts in the two proceedings. In the instant case, Joan asserts a federal bankruptcy court ruling precludes our reconsideration of certain issues. The different natures of the two courts involved complicates our analysis. *See id.* at V–208. However, we do not believe either the difference in federal and state jurisdiction or the limited nature of the bankruptcy court's jurisdiction alone prohibits application of the doctrine. *See, generally, Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *see also Ackley State Bank v. Haupt*, 451 N.W.2d 495, 497 (Iowa 1990).

■ B. *The Nature of the Issues.* Next, we examine the nature of the litigation and the specific issues asserted to be conclusively determined in the prior action.

Stating simply a rather complicated matter, the court in Suit II must examine the

specific issues raised and necessarily decided in Suit I. It must separate out those exact issues which served as the basis of the decision in the first suit. Only if there is complete and precise identity between such an issue and an issue in Suit II may there be preclusion. Vestal, *supra*, at V–196. As such, four prerequisites exist to the application of issue preclusion in any case:

1. The issue concluded must be identical;

2. The issue must have been raised and litigated in the prior action;

3. The issue must have been material and relevant to the disposition of the prior action;

4. The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*See Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981); *see also* Restatement (Second) of Judgments, § 27 (1980).

■ *Questions of Law or Fact.* Joan asserts the bankruptcy court conclusively decided the absolute bar rule is applicable under these circumstances. This issue is most accurately viewed as a question of law. As such, Joan asserts the bankruptcy court's ruling has preclusive effect with regard to a legal issue. On this subject, one commentator has stated:

> Although in some cases it may be held that there is preclusion as to legal points involved because of earlier decisions involving the precluded litigant, the authorities examined suggest that this is not likely to happen with any frequency. The courts generally will be rather reluctant to apply a rule of law simply because it was applied in an earlier case. If the cases are closely related factually and in point of time, the courts might apply the decision made earlier and hold that there is preclusion on the matter of law. Generally, however, it would seem that there is complete freedom to examine any point of law regardless of an earlier decision.

*See* Vestal, *supra*, at V–250. This case presents us with no reason to break with the general reluctance to afford preclusive effect to prior determinations of legal questions.

Furthermore, we are uncertain whether the bankruptcy court considered the Iowa Supreme Court's *Barnhouse* decision when ruling in the prior action. The *Barnhouse* decision marked a significant change in Iowa case law construing Iowa Code section 554.9504(3). The *Barnhouse* case was filed in May, 1987, and did not appear in the advance sheets until July 7, 1987. The bankruptcy trial began in September, 1987, only two months later, and the bankruptcy court did not cite *Barnhouse*. In light of this uncertainty, and because we sit in equity, we are inclined to afford the bank an opportunity to relitigate the issues Joan asserts as conclusively determined.

C. *The Parties.* Finally, we consider the parties and their relationships to both actions. In this case, Joan, who was not a party to the prior action, is attempting to use the doctrine offensively and thereby preclude the bank, which was the losing "plaintiff" in the prior action, from relitigating certain issues.

> [T]he phrase "offensive use" or "affirmative use" of the doctrine is used to mean that a stranger to the judgment, ordinarily the Plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim.

*Hunter v. City of Des Moines*, 300 N.W.2d at 123 (quoting *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971)).

■ The offensive use of issue preclusion is appropriate only under certain circumstances. The Iowa Supreme Court has adopted the prescription of the Restatement (Second) of Judgments section 88. *Hunter*, 300 N.W.2d at 125. Among the considerations we must make under the Restatement approach are (1) whether, in the prior action, the bank was afforded a full and fair opportunity to litigate the issues which Joan asserts as conclusively determined, and (2) whether any other cir-

cumstances are present which would justify allowing the bank to relitigate those issues. *See Hunter,* 300 N.W.2d at 126 (citing Restatement (Second) of Judgments § 88 (Tent. Draft No. 2, 1975)). We believe the second consideration defeats Joan's offensive use of the doctrine. The contemporary change in the law and the uncertainty whether the bankruptcy court considered the change are sufficient reason, we think, to decline granting preclusive effect to the bankruptcy court's ruling in the prior action. We affirm on this issue.

IV. *Release of One Partner.* Finally, Joan argues the bankruptcy court's release of Leonard effects a release of her as well. To find otherwise, she asserts, would lead to unfair and incongruous results. We find no merit in this argument.

The costs of this appeal are taxed to the appellant, Joan Knierim.

For all the reasons stated, the judgment of the district court is affirmed.

AFFIRMED.

HAYDEN, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I concur in the result only.