# IN THE COURT OF APPEALS OF IOWA

No. 19-0244
Filed January 9, 2020

**RSB ENTERTAINMENT, LLC d/b/a PLAZA BOWL and RICHARD J. MOORES,**
    Plaintiffs-Appellants,

**vs.**

**HERITAGE BANK, N.A.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, Judge.

RSB Entertainment, LLC and Richard Moores appeal from the district court's summary judgment ruling and dismissal of their claim for damages. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR NEW TRIAL.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellants.

Sander J. Morehead of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, South Dakota, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Gamble, S.J.* Schumacher, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

RSB Entertainment, LLC (RSB), and its sole shareholder, Richard Moores, appeal from the district court order dismissing an action to recover funds from Heritage Bank, N.A. The dispute stems from a loan from Heritage Bank to RSB personally secured by Moores for the purpose of financing a bowling center. RSB[1] contends the district court erred in granting Heritage Bank's motion for partial summary judgment concluding certain bowling equipment amounted to fixtures to real estate purchased by the bank at sheriff's sale following an earlier mortgage foreclosure decree. RSB also appeals a finding by the district court upon trial of its damage claim that Heritage Bank disposed of other collateral securing the loan in a commercially reasonable manner. We affirm the district court in part and reverse and remand in part.

## I. Facts and Prior Proceedings

In 2010, RSB obtained a loan from Heritage Bank to purchase Plaza Bowl bowling alley and One Eyed Jack's, an attached restaurant in Sioux City. Pursuant to the loan agreement, RSB executed a promissory note for $1,525,000. Moores personally guaranteed the loan. Heritage Bank obtained a mortgage on the real property including fixtures and secured interests in RSB's personal property.

RSB defaulted on the note. On October 31, 2016, Heritage Bank obtained a decree of foreclosure on the real property. On January 4, 2017, Heritage Bank purchased the real property at a sheriff's sale for $1,350,000 leaving a deficiency of $136,447.53 subject to 6.25% annual interest and costs.

---

[1] Both RSB and Moores appeal from the district court's ruling. Because they bring the same claims on appeal, we will generally refer to both appellants as RSB.

On January 3, 2017, Heritage Bank filed a replevin action to repossess the personal property subject to the security interest. Heritage Bank attached to its petition a list of personal property obtained from the original appraisal for the loan and obtained a writ of replevin based on the listed property. Following the sheriff's sale and the filing of the replevin action, RSB vacated the premises. On January 5, 2017, Heritage Bank took possession of the property and performed an updated inventory of the personal property surrendered by RSB to the bank. Heritage Bank revised its list of personal property subject to the replevin action consistent with the updated inventory. RSB did not contest the inventory or revised list of personal property in the replevin action. On November 17, 2017, the Court entered a judgment of replevin in favor of Heritage Bank for the personal property listed in the revised list.

From January 2017 to May 2017, Heritage Bank leased the real and personal property to J&B Investments (J&B) for one dollar per month so long as J&B covered any operating and maintenance associated with the bowling-alley operation. Heritage Bank leased the property to J&B on a short term basis so that the bowling league using Plaza Bowl could finish out the season and the property could be marketed as an ongoing business. Heritage Bank entered into another lease with J&B from August 2017 to May 2018, providing $3200 per month in rent for the real property and use of the personal property inside. It also entered into a lease agreement with Mangos, L.C. to operate One Eyed Jack's restaurant for $3200 per month.

On June 13, 2017, shortly after Heritage took possession of the property, Vander Werff & Associates appraised the unattached personal property as having

a $34,000 liquidation value.[2]   In May 2018, Heritage Bank performed a final walk-through of the property and created a list of personal property for final disposition of the collateral.

RSB commenced the present proceedings in April 2017 in effort to enjoin Heritage Bank from disposing of the unattached personal property and obtain fair compensation for use of the unattached personal property, including the Plaza Bowl and One Eyed Jack's tradenames.  Heritage Bank answered, counterclaimed and sought declaratory judgment that certain items of bowling equipment and machinery are improvements, structures, fixtures, or replacements.  Heritage Bank sought partial summary judgment on its counterclaim.  The district court granted the bank's motion for partial summary judgment and declared the identified items are "fixtures, improvements, or replacements to the real property."[3]

Meanwhile, Heritage Bank used a commercial real estate company to market the real and personal property as a going concern for purchase.  On April 9, 2018, Heritage Bank and J&B entered into a purchase agreement and specified closing would occur on May 17.  Heritage Bank sent notice of disposition to RSB on May 4.  The bank attached a list of unattached personal property compiled at the walk-through to the notice of disposition.  J&B assigned its purchase rights to Klinger Properties.   Klinger Properties then purchased the real property and personal property from Heritage Bank for $850,000 with $136,000 allocated to the personal property.

---

[2] Vander Werff & Associates previously appraised the unattached personal property in 2014 and valued it at $130,000.

[3] RSB sought interlocutory appeal on this ruling, which the supreme court denied.

RSB requested an accounting for Heritage Bank. After applying the proceeds of the sale and proceeds from renting the personal property, a deficiency of $11,000 remained. In order to clear a lien, Moore paid the remaining balance due to Heritage Bank. At trial, RSB challenged the timing of the notice of disposition, the commercial reasonableness of the sale of the personal property, the amount of rental income produced by the real property, and value and items disposed of in the disposition. RSB sought monetary damages.

The district court determined notice of disposition was timely and the disposition was commercially reasonable in all respects. The district court dismissed RSB's claim for damages. RSB now appeals the dismissal of their action for damages and the district court's partial summary judgment ruling.

## II. Analysis

### A. Fixtures.

First we address RSB's claim that the district court erred in awarding summary judgment to Heritage Bank concluding bowling lanes, bowling ball return systems, bowling ball pin-setting equipment, and bowling ball scoring systems amounted to fixtures, improvements, or replacements to the real property.

We review a grant of summary judgment for correction of errors at law. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In assessing whether

summary judgment is warranted, we view the entire record in a light most favorable to the nonmoving party." *Crippen*, 618 N.W.2d at 565.

Finding no question of material fact, we conclude the district court properly granted Heritage Bank's motion for partial summary judgment because the identified property constituted fixtures.

> Under our common law rule personal property becomes a fixture when:
> (1) it is actually annexed to the realty, or to something appurtenant thereto;
> (2) it is put to the same use as the realty with which it is connected; and
> (3) the party making the annexation intends to make a permanent accession to the freehold.

*Young v. Iowa Dep't of Transp.*, 490 N.W.2d 554, 556 (Iowa 1992); *First Trust & Sav. Bank of Moville, Iowa v. Guthridge*, 445 N.W.2d 401, 402 (Iowa Ct. App. 1989).

RSB contends there is a question whether the various equipment was intended to be permanently placed in the real property defeating fixture classification. RSB cites Moores' affidavit stating the equipment was to be periodically replaced. But Moores' statement of subjective intent in itself does not sway our classification of the property as fixtures.

> The character of the annexation and the use, if found, is mainly of importance in determining the intention of defendant in making it. This intention is not the secret purpose of the owner, but that which should be implied from his acts. This is ordinarily to be inferred from the nature of the article, the manner and object of its use, and mode of its annexation.

*Thomson v. Smith*, 83 N.W. 789, 790 (1900). One can imagine a number of components of real property that are periodically replaced in the practice of good stewardship and are undeniably a part of real property such as siding or roofing

material.  Instead, we conclude "intent is to be *inferred* from the nature of the machinery, the relation of the parties, the structure and mode of the annexation[,] and the purpose of the annexation."  *FirstMerit Bank, N.A. v. Antioch Bowling Lanes, Inc.*, 108 F. Supp. 3d 618, 622 (N.D. Ill. 2015).  Put another way,

> if an owner of the premises installed equipment necessary to use the realty in the manner in which he used it, and the equipment was in fact necessary to the realty's use, the owner [is] viewed as having intended a permanent installation and the equipment [is] viewed as a fixture.

*Id.*

We conclude the bowling lanes, bowling ball return systems, bowling ball pin-setting equipment, and bowling ball scoring systems installed in a building that operated as a bowling alley for several decades amount to fixtures.  To conclude otherwise would impermissibly substantially diminish the value of the real property. *See Ford v. Venard*, 340 N.W.2d 270, 272 (Iowa 1983); *see also FirstMerit Bank, N.A.*, 108 F. Supp. 3d at 625 ("[T]he court concludes that ABL's bowling lanes, including approaches, lane gutters, bowling ball return system, pin setting machines, and scoring consoles are essential to the real property's long-time use as a bowling alley and are fixtures, subject to FirstMerit's mortgage.").

With respect to the summary judgment ruling, we affirm.

**B. Commercial Reasonableness of Disposition**

Next we address RSB's claim that Heritage Bank did not dispose of the collateral in a commercially reasonable manner.

"Our review of the court's decision after trial is governed by how the case was tried in the district court*." Howard v. Schildberg Constr. Co.*, 528 N.W.2d 550, 552 (Iowa 1995).  Believing the case was tried in equity, the parties claim our

review is de novo. *See* Iowa R. App. P. 6.907. In fact, the petition was filed in equity. However, "[t]he essential character of a cause of action and the relief it seeks, as shown by the complaint, determine whether an action is at law or equity." *Knudsen v. Andreasen*, 462 N.W.2d 294, 295 (Iowa Ct. App. 1990). Here, RSB sought money damages, indicating this is an at law action. Moreover, these proceedings carry the hallmarks of a law action such as evidentiary rulings and entry of an order rather than a decree. *See Sutton v. Iowa Trenchless, L.C.*, 808 N.W.2d 744, 748 (Iowa Ct. App. 2011). "We find the case was tried as a law action below, and as such, our review is for correction of errors at law." *Id.* at 748–49; *see also C&J Leasing Corp. v. Beasley Invest., Inc.*, No. 08-0074, 2009 WL 777870, at *2 (Iowa Ct. App. Mar. 26, 2009) ("Our scope of review in this action is for the correction of errors at law.").

The Uniform Commercial Code (UCC) is codified in Iowa Code chapter 554.[4] Iowa Code § 554.1101 (2017). "Sections 554.9609(1)(a) and 554.9610(1) allow a secured creditor, such as [Heritage Bank], to repossess and dispose of collateral upon a debtor's default." *C&J Leasing Corp.*, 2009 WL 777870, at *2. Upon disposition, a secured creditor must "apply the proceeds of the disposition first to the expenses of the disposition and then to the satisfaction of the indebtedness secured by the collateral." *See id.*; *accord* Iowa Code § 554.9615(1). "The debtor . . . is liable for any deficiency under section 554.9615(4)." *C&J Leasing Corp.*, 2009 WL 777870, at *2.

---

[4] Article 9 of the UCC covering secured transactions is provided for in article 9 of chapter 554. *See* Iowa Code § 554.9101.

"Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Iowa Code § 554.9610(2). "A creditor is additionally required to provide the debtor . . . with a 'reasonable authenticated notification of disposition' within a reasonable time before the intended disposition." *C&J Leasing Corp.*, 2009 WL 777870, at *3 (quoting Iowa Code § 554.9611(2)). As such, the secured creditor must dispose of the collateral in a commercially reasonable manner and provide notice of the same. *See Hartford–Carlisle Sav. Bank v. Shivers*, 566 N.W.2d 877, 880 (Iowa 1997). However, a secured creditor is not required to prove compliance unless the debtor challenges the secured party's compliance. *See* Iowa Code § 554.9626(1)(a). Here, RSB challenges notice.

The district court concluded Heritage Bank gave RSB proper notice of disposition because the notice complied with requirements of Iowa Code sections 554.9611 and 554.9613. Further, the district court found the notice to be timely with respect to section 554.9612.

However, Heritage Bank provided RSB notice of disposition after it entered into the purchase agreement. The purchase agreement did not preserve RSB's right to redemption or its right to present a higher bid. As a result, the notice of disposition was the functional equivalent of no notice at all because it did not protect RSB from a potentially inadequate price and foreclosed RSB's ability to influence the purchase price. *Cf. Beneficial Fin. Co. of Black Hawk Cty. v. Reed*, 212 N.W.2d 454, 459 (Iowa 1973) ("The purpose of notice is to permit the debtor to bid at the sale or to protect [itself] from an inadequate sale price."); *accord Knierim v. First State Bank*, 488 N.W.2d 454, 457 (Iowa Ct. App. 1992)

(considering if notice was adequate to permit the debtor to purchase the property when determining whether the purpose of the notice requirement was frustrated).

RSB argues the sale was not commercially reasonable because the notice was fatally flawed. We agree the notice was defective. However, we conclude the flaw was not fatal because Heritage Bank's failure to provide RSB with proper notice of disposition is not an absolute bar to the recovery of a deficiency. *See C&J Leasing Corp.*, 2009 WL 777870, at *5 (acknowledging the "absolute bar rule" is no longer applicable).

Heritage Bank argues even if the notice of disposition was untimely, the district court correctly found the sale was commercially reasonable under *Knierim*, 488 N.W.2d at 457, because the sale price of the collateral was equal to or greater than market value. Relying on *Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181, 186 (Iowa 1987), *Knierim* allowed a commercially reasonable sale to proceed as an exception to the absolute bar rule even though the bank failed to provide the debtor with notice of disposition. *Knierim*, 488 N.W.2d at 457; *Hartford–Carlisle Sav. Bank,* 566 N.W.2d at 883 ("We do not view *Barnhouse* as abrogating the absolute bar rule. Rather we view *Barnhouse* as an exception to the rule and therefore must be limited to its facts."). However, *Knierim* was decided prior to amendments to chapter 554 adopting the rebuttable presumption rule. *See* 2001 Iowa Acts ch. 1149, § 124 (codified at Iowa Code § 554.9626); *C&J Leasing Corp.*, 2009 WL 777870, at *5.

A deficiency in notice triggers the rebuttable presumption rule. *See Gen. Elec. Capital Corp. v. FPL Serv. Corp.*, 995 F. Supp. 2d 935, 940 (N.D. Iowa 2014) (applying Iowa law and finding failure to provide notice triggers the rebuttable

presumption rule); *Regions Bank v. Thomas*, 532 S.W.2d 330, 337 (Tenn. 2017) (finding deficient notice triggered rebuttable presumption rule under article 9 of the UCC). The rebuttable presumption rule shifts the burden to the creditor to prove the amount of proceeds that would have been realized had it provided proper notice would have been less than the proceeds actually achieved. *See* Iowa Code § 554.9626(1)(c)(2); *Gen. Elec. Capital Corp.*, 995 F. Supp. 2d at 940. The district court erred in applying the outdated *Knierim/Barnhouse* exception to the absolute bar rule in determining whether the Heritage Bank was entitled to a deficiency following a commercially reasonable sale. Instead, the statutory rebuttable presumption rule applies. Therefore, we conclude the district court applied the wrong legal standard in determining Heritage Bank's entitlement to a deficiency.[5]

Remand is necessary so the district court can apply the rebuttable presumption rule to determine whether Heritage Bank is entitled to a deficiency. We do not reach the remaining issues raised by RSB in this appeal as they are related to the amount of deficiency, if any.

Because the court applied the incorrect legal standard, we reverse and remand for new trial.

**III. Conclusion**

The district court properly granted summary judgment determining various items of bowling equipment amounted to fixtures to the real property. However,

---

[5] Neither party briefed the rebuttable presumption rule. However, RSB raised the adequacy of notice of disposition and the commercial reasonableness of the sale at trial and on appeal. Therefore, we conclude error is preserved.

the court erred in determining disposition was commercially reasonable. We remand to the district court for new trial to determine whether Heritage Bank is entitled to a deficiency, and if so, the amount.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR NEW TRIAL.**